Ray SUMMEY and Helen Johnson, Individually and as representatives of a class of parties under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs,

v.

FORD MOTOR CREDIT COMPANY, Guy Motors, Inc., Ralph Hayes Motors, Country Ford, Inc., Roper Auto Sales, Inc., Julian Roper Ford, Inc., Auto Sales Company, Holder-Grant Ford, Inc., and John Foster Motors, Inc., Defendants.

Civ. A. No. 76–814.

United States District Court,
D. South Carolina,
Anderson Division.

Dec. 21, 1976.

J. Kendall Few, Harold R. Lowery, Anderson, S. C., for plaintiffs.

Henry F. Floyd, G. Edward Welmaker, Pickens, S. C., for Holder-Grant Ford, Inc.

David W. Robinson, II, Columbia, S. C., for Ford Motor Credit Co.

Walter T. Cox, Jr., Anderson, S. C., for Guy Motors, Inc.

James R. Gilreath, Greenville, S. C., for Country Ford, Roper Auto Sales and Julian Roper Ford.

Lowell W. Ross, Walhalla, S. C., for Auto Sales, Inc.

H. Grady Kirven, Anderson, S. C., for Ralph Hayes Motors.

Felix L. Finley, Jr., Pickens, S. C., for John Foster Motors, Inc.

## ORDER ON DEFENDANT FORD MOTOR CREDIT COMPANY'S MOTION TO DISMISS

HEMPHILL, District Judge.

The motion of Ford Motor Credit Company (hereinafter designated Ford) filed August 6, 1976, invites decision by this court. Ford insists that the complaint fails to state a claim upon which relief can be granted, thus seeking application of Rule 12(b)(6) [1], Federal Rules of Civil Procedure. This court, upon review of supporting memoranda filed by counsel, reviewing applicable decisions, and hearing oral arguments (November 14, 1976) finds that the motion should be granted. The reasons for the court's decision are set forth herein.

By complaint filed May 11, 1976, plaintiffs, individually and as representatives of a class [2], limited to citizens of the Anderson Division of the United States District Court for the District of South Carolina, alleged purchasers of an automobile from one or more of the named dealers, and financed with moving defendant, etc., seeks damages, and other relief from Ford and eight dealers of the geographical area involved for alleged "fraudulent and deceptive trade and collection practices carried on by the defendants . . . as a part of an illegal combination and conspiracy in restraint of trade and commerce in violation of § 5 of the Federal Trade Commission Act (15 U.S. C.A. § 45) [3] and §§ 1 and 2 of the Sherman

---

1. Fed.R.Civ.P. 12(b)(6) provides: Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on the Pleadings.

   (b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

2. The court, heavily engaged, did not reach the determination directed by Rule 23(c)(1); such is, of course, now unnecessary unless the ruling is declared erroneous.

3. 15 U.S.C.A. § 45(a)(1) provides: Unfair methods of competition unlawful; prevention by Commission—Declaration of unlawfulness; power to prohibit unfair practices.

   (a)(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

Anti Trust Act (15 U.S.C.A. §§ 1 and 2)." [4] All of the defendants made timely responses. Subsequently, on motion of plaintiffs, not contested by defendants, all of the dealer defendants were dismissed but one John Foster Motors, Inc.[5] Each had filed with the court a motion similar to that of Ford.

In their complaint plaintiffs allege an agreement, combination or conspiracy between Ford Motor Credit Company and the various Ford and Lincoln-Mercury automobile dealers under which (1) Ford agrees to finance substantially all of the vehicles sold by the dealers (¶ 8 of the complaint); (2) the dealers agree to pay off the balance of all contracts on all vehicles repossessed by Ford in exchange for a transfer of title from Ford to the dealer (¶ 8); (3) the dealers are then allowed to retain any surplus which may result from the sale of the repossessed vehicle (¶ 9); (4) to accomplish the retention of such surplus by the dealers Ford and the dealers have agreed to employ various deceptive trade practices (¶ 10); (5) that such agreement or combination constitutes (a) a conspiracy to employ deceptive trade and collection practices, (b) a conspiracy to fix prices, (c) a conspiracy to boycott, (d) a conspiracy to restrain trade, and (e) a conspiracy to monopolize the financing of motor vehicles (¶ 11). Plaintiffs further allege that as a result of such combination and conspiracy they have each been damaged in the loss of the surplus of the resale price of their repossessed vehicles over the amount of their debt and legitimate repossession costs.

Ford's motion to dismiss under Rule 12(b)(6) appears to be based upon the following grounds:

1. Plaintiffs have not alleged a federal cause of action but state only a cause of action for misrepresentation or conversion or one arising under the Uniform Commercial Code, which South Carolina has adopted.

2. No private federal claim exists for a violation of the Federal Trade Commission Act.

3. Plaintiffs cannot convert a common law business tort into a federal antitrust action by charging a conspiracy and adopting the language of monopoly and restraint of trade statutes or decisions.

4. Defendants alleged conduct was neither aimed at nor had the effect of restricting competition.

5. The five particulars of plaintiffs' restriction of competition allegations state no cause of action under the Sherman Antitrust Act.

6. Plaintiffs' allegations of price fixing are not ones of substance.

7. The conduct alleged in the complaint does not constitute a boycott "since no one in the marketplace could possibly be injured by such conduct."

8. Plaintiff's allegations of a conspiracy in restraint of trade are merely conclusory allegations which add nothing to the legal sufficiency of the complaint.

9. Plaintiffs' allegations charging a conspiracy to monopolize are conclusory and unsupported by any factual assertions.

In the hearing of the motion the court allowed plaintiffs to refer to the Answers of the dealers, despite pending motions by plaintiffs to dismiss the action as to the dealers. This was done to give the plain-

---

4. 15 U.S.C.A. § 1 provides in part: Trusts, etc., in restraint of trade illegal; exception of resale price agreements; penalty

    Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. 15 U.S.C. § 2 provides: Monopolizing trade a felony; penalty

    Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among

the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

5. Seven were dismissed by this court's order of December 14, 1976 and the eighth by order of December 21, 1976.

tiffs the consideration required of the court when such a motion is presented:

> For the purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true.[6]

The court considered those matters which constituted "material" or "well pleaded" facts to draw the line as to what was fact and what constituted mere "legal conclusions." Counsel for plaintiffs admitted that either plaintiff, or any other purchaser from any of the dealers named, or any other Ford dealer could finance the purchase with a bank, other credit company, or, for that matter any person, firm, corporation of his/her choice. Additionally, after default and the return by Ford of any car, financed with it, to the dealer, the purchaser was notified and could repurchase the car as and if any person could. The defaulting purchaser was notified and given a chance to make any inquiry necessary. When questioned as to the antitrust effect on competition, plaintiff's counsel could not/did not name any competitor in the financing field or automobile dealership field affected. The class sought to be represented were persons in the Anderson Division (Anderson, Pickens and Oconee Counties of South Carolina) who had purchased (apparently voluntarily) cars from one of the eight dealers named, but later exonerated by plaintiffs. It thus appeared that plaintiffs claimed none of those effects known as horizontal[7] effects of the alleged restraint, but insists the "vertical"[8] effect is sufficient. The court does not agree. The complaint is insufficient.

Initially, this court is mindful of the ruling in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, 84, wherein the late Mr. Justice Black wrote:

> n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

## I. CAN PLAINTIFFS PURSUE THEIR COMPLAINT IN THIS COURT UNDER SECTION 5 OF THE FAIR TRADE COMMISSION ACT (15 U.S.C. § 45)?

It is well-settled that there is no private, federal claim for which this court can grant relief for violations of the Federal Trade Commission Act. *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Holloway v. Bristol-Myers Corp.,* 158 U.S.App.D.C. 207, 485 F.2d 986 (1973); *Carlson v. Coca-Cola Co.,* 483 F.2d 279 (9th Cir., 1973). See also *Nader v. Allegheny Airlines,* 426 U.S. 290, 96 S.Ct. 1978, 1986 n. 10, 48 L.Ed.2d 643 (1976).

Section 5 of the FTC Act broadly declares that unfair methods of competition and unfair or deceptive acts or practices in commerce are "unlawful" and that whenever the Federal Trade Commission (FTC) has reason to believe that a person is using such a method or practice in commerce, and it appears to the Commission that a proceeding by it would be in the public interest, the Commission[9] shall issue a complaint and

---

**6.** Wright and Miller, Federal Practice and Procedure (1969 Ed.), Vol. 5, § 1357. See note 46 for supporting citations.

**7.** See *United States v. Nat. Ass'n of Securities Dealers,* 422 U.S. 694, 95 S.Ct. 2427, 45 L.Ed.2d 486; *Hobart Bros. Co. v. Malcolm T. Gilliland, Inc.,* 471 F.2d 894 (5th Cir. 1973) cert. denied, 412 U.S. 923, 93 S.Ct. 2736, 37 L.Ed.2d 150; *United States v. Sealy, Inc.,* 388 U.S. 350, 87 S.Ct. 1847, 18 L.Ed.2d 1238.

**8.** *United States v. Columbia Steel Co.,* 334 U.S. 495, 68 S.Ct. 1107, 92 L.Ed. 1533.

**9.** 15 U.S.C. § 45(b) provides in part: Unfair methods of competition unlawful; prevention by Commission—Declaration of unlawfulness; power to prohibit unfair practices.

Proceeding by Commission; modifying and setting aside orders

(b) Whenever the Commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue

proceed against such person. Section 5 was originally enacted in 1914 (38 Stat. 717, *et seq.*), and it did not take long for litigants to assert—as plaintiffs do here—that its broad language provides the basis for a private, federal cause of action. The United States Supreme Court emphatically rejected that claim in *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), where, as here, the plaintiff attempted to tack a Section 5, FTC Act, claim onto an antitrust complaint. In affirming the dismissal of plaintiff's claim for failure to state a federal cause of action, the Court stated (270 U.S. at 60, 46 S.Ct. at 368, 70 L.Ed. at 754):

> There is an attempt to allege unfair methods of competition which may be put aside at once, since relief in such cases under the Trade Commission Act (Comp.St. §§ 8836a–8836k) must be afforded in the first instance by the commission.

Since the *Moore* decision, two federal courts of appeals have recently and squarely reconsidered the question of whether a private party may bottom a federal court claim on an alleged violation of Section 5 of the FTC Act. In *Carlson v. Coca-Cola Co.,* 483 F.2d 279 (9th Cir. 1973), the Ninth Circuit perfunctorily and categorically ruled that a private party could not maintain such a claim, citing *Moore* and many subsequent cases. Almost simultaneously, the United States Court of Appeals for the D. C. Circuit considered the issue exhaustively in a 15 page opinion by Judge Leventhal, *Holloway v. Bristol-Myers Corp.,* 158 U.S. App.D.C. 207, 208, 485 F.2d 986 (1973). The court summarized its conclusion as follows (158 U.S.App.D.C. at 208, 485 F.2d at 987):

> The central ruling in this case holds that private actions to vindicate rights asserted under the Federal Trade Commission Act may not be maintained.

*Holloway* was recently cited by the United States Supreme Court in *Nader v. Allegheny Airlines,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), where the Court stated that Section 411 of the Federal Aviation Act, 49 U.S.C. § 1381, was modelled on Section 5 of the FTC Act, and that Section 411 likewise does not support a private claim in federal court.

The United States Supreme Court and the two federal courts of appeals that have recently considered the question have all reached the conclusion that there is no private, federal claim for which relief can be granted for alleged violations of the Federal Trade Commission Act. Plaintiffs' complaint, to the extent it attempts to assert such a claim, should be dismissed.

## II. DO PLAINTIFFS HAVE A CLAIM UNDER SECTIONS 1 AND 2 OF THE SHERMAN ANTITRUST ACT (15 U.S.C. § 1 and § 2)?

■ The Sherman Antitrust Act proscribes only those practices which are principally designed to restrict free and open competition. Congress did not intend the Sherman Act to preempt and supersede state law proscribing conduct which has only an incidental effect on competition. *Apex Hosiery v. Leader,* 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940); *Armco Steel Corp. v. United Mine Workers,* 505 F.2d 1129 (4th Cir. 1974); *Miller Motors v. Ford Motor Co.,* 252 F.2d 441 (4th Cir. 1958). Thus, alleged conduct which is basically a common law business tort cannot be converted from a state law claim to a federal antitrust cause simply by charging conspiracy and adopting the language of monopoly and restraint of trade. See *e. g., Arizona v. Cook Paint and Varnish Co.,* 541 F.2d 226 (9th Cir. 1976), *aff'd* 391 F.Supp. 962 (D.Ariz.1975); *Craig v. Sun Oil Co.,* 515 F.2d 221 (10th Cir. 1975); *Ace Beer Distributors, Inc. v. Kohn, Inc.,* 318 F.2d 283 (6th Cir. 1963).

■ Section 1 broadly proscribes every contract, combination or conspiracy in restraint of trade or commerce, while Section 2 proscribes every attempt to monopolize

---

and serve upon such person, partnership, or corporation a complaint stating its charges in that respect and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said complaint.

and monopolization of any part of commerce. But it was early determined that, despite its general language, the Sherman Act is aimed at a narrower class of conduct than a literal reading might indicate. As stated in the landmark cases of *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911), and *United States v. American Tobacco Co.,* 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663 (1911), the terms "restraint of trade" and "monopolization," as used in the Sherman Act, take their origin and at least "their rudimentary meaning" [10] from pre-1890 Anglo-American common law. Thus, these terms encompass only practices which are principally intended or designed to restrict free and open competition in the marketplace. Congress did not intend the Sherman Act to preempt and supersede state law proscribing conduct which might have only an incidental effect on competition, albeit a restrictive one. It has never been claimed, for example, that two robbers, acting in concert, who hold up a restaurant engaged in interstate commerce thereby violate the Sherman Antitrust Act (which has both criminal and civil penalties), even though such conduct is literally a combination in restraint of trade.

Justice (later Chief Justice) Stone's definitive opinion in *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940), demonstrated clearly these limitations on the scope of the Sherman Act. There, the defendant labor union seized the plaintiff's factory by force and shut it down by a sit-down strike for over three months, thus preventing 130,000 pairs of stockings from reaching the marketplace. The Court stated (310 U.S. at 484, 60 S.Ct. at 987, 84 L.Ed. at 1317):

> We find abundant support for petitioner's contention that the effect of the sit down strike was to restrict substantially the interstate transportation of its manufactured product, so as to bring the acts of respondents by which the restriction was effected within the reach of the commerce power if Congress has seen fit to exercise it.

10. 221 U.S. at 51, 31 S.Ct. at 512, 55 L.Ed. at 641.

The Court then proceeded to examine the factory owner's contention that Congress had so exercised its power in the Sherman Act and concluded that it had not, stating (310 U.S. at 486, 60 S.Ct. at 988, 84 L.Ed. at 1318–1319):

> But the Sherman Act admittedly does not condemn all combinations and conspiracies which interrupt interstate transportation.
>
> . . . . .
>
> . . . The prohibitions of the Sherman Act were not stated in terms of precision or of crystal clarity and the Act itself did not define them. . . . courts should interpret its words in the light of its legislative history and of the particular evils at which the legislation was aimed. . . . (310 U.S. at 489, 60 S.Ct. at 989, 84 L.Ed. at 1320–1321)
>
> . . . The legislative history of the Sherman Act as well as the decisions of this Court interpreting it . . . do not suggest that, in general, state laws or law enforcement machinery were inadequate to prevent local obstructions or interferences with interstate transportation, or presented any problem requiring the interposition of federal authority. . . . It was another and quite a different evil at which the Sherman Act was aimed. (310 U.S. at 490–92, 60 S.Ct. at 990–92, 84 L.Ed. at 1321–1323)

Significantly, Justice Stone did not rest his conclusion that there had been no Sherman Act violation on the defendant union's contention that Congress meant to exclude labor union activity from the Sherman Act's prohibitions; in fact, he rejected that argument (310 U.S. at 487–488, 60 S.Ct. at 988–989, 84 L.Ed. at 1319–1320). Thus, the Court's decision was based on a fundamental examination of the kind of "restrictions" included in the Sherman Act itself, and not on any claimed special labor exemption from its prohibitions.[11]

11. A recent Fourth Circuit case, citing *Apex Hosiery,* holds to the same effect. In *Armco Steel Corp. v. United Mine Workers,* 505 F.2d

In *Apex Hosiery* the restrictive conduct was labor violence. Since then a host of federal decisions arising from diverse factual contexts have held that plaintiffs, no doubt motivated by the attraction of treble damages plus attorneys' fees and costs, cannot convert into a federal antitrust case what is basically a common law business tort, a garden variety kind of state law violation, by simply charging conspiracy and adopting the language of monopoly and restraint of trade. In *Sun Valley Disposal Co. v. Silver State Disposal Co.*, 420 F.2d 341 (9th Cir. 1969), plaintiff was competing with one of defendants for a county garbage disposal franchise. Charging that misrepresentations were made in defendant's franchise proposal and that a conspiracy or combination was entered into whereby illegal procedures were used to obtain the franchise award, plaintiff brought suit under the Sherman Act. Despite the fact that the district court had concluded that the evidence would support a finding of conspiracy or combination, the Court of Appeals affirmed a summary judgment for defendants, noting that the problem was not whether defendants' alleged conspiratorial conduct was actionable, but rather whether such conduct was the kind reached by the Sherman Act. The Court held that it was not, saying (420 F.2d at 343):

A plaintiff cannot, by charging a conspiracy, turn what is basically a claim of violation of state law into a federal antitrust case.

At least four other circuit courts of appeals have held to the same effect.[12] The Tenth Circuit reached a similar conclusion in *Craig v. Sun Oil Co.*, 515 F.2d 221 (10th Cir. 1975), holding that an alleged business tort based on fraudulent misrepresentations was not a proper Sherman Act case. Likewise, in *Norville v. Globe Oil & Refining Co.*, 303 F.2d 281 (7th Cir. 1962), the Seventh Circuit held that although defendants may have acted in concert and their action may have affected commerce restrictively in the sense they damaged plaintiff, no Sherman Act violation was involved.[13] Finally, the Sixth Circuit in *Ace Beer Distributors, Inc. v. Kohn, Inc.*, 318 F.2d 283 (6th Cir.), *cert. denied*, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963), affirmed the dismissal of a Sherman Act complaint charging that plaintiff's competitor had maliciously persuaded plaintiff's supplier to terminate plaintiff as a distributor in order to obtain such business for himself, *i. e.*, the common law tort of malicious interference with contract. In affirming the lower court's dismissal, the Court of Appeals said (318 F.2d at 286):

Whether a right of damages exists in some other action based on breach of

1129 (4th Cir. 1974), cert. denied, 423 U.S. 377, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975), the Court affirmed dismissal of a Sherman Act claim in a labor work stoppage case and stated (505 F.2d at 1134):

There is no allegation or contention that the strike of the unions involved, however illegal it may have been, was for the purpose of restraining commercial competition in the marketing of goods or services, or that it had operated to restrain commercial competition in some substantial way. There was accordingly no cause of action stated under the Sherman Act.

See also *Miller Motors, Inc. v. Ford Motor Co.*, 252 F.2d 441 (4th Cir. 1958).

**12.** In addition to the cases cited in the test, see *Hill v. A–T–O, Inc.*, 535 F.2d 1349 (2d Cir. 1976).

**13.** The court in *Norville* said (303 F.2d at 282–283):

Aside from the use of conventional antitrust language . . . the claims advanced by plaintiff amount to overreaching, imposition and fraud in a business transaction. All this occurred in the state of Illinois, of which all the parties are citizens. Even if the products involved might have been in interstate commerce, the wrongs alleged are actionable under the law of Illinois, which has jurisdiction over all the parties. We held in *Parmelee Transportation Company v. Keeshin*, 7 Cir., 292 F.2d 794, at 804:

. . . However, the use of conventional antitrust language in drafting a complaint will not extend the reach of the Sherman Act to wrongs not germane to that act, even though such wrongs be actionable under state law. We are not concerned with labels. Otherwise, an adroit antitrust lawyer might use his skill in the use of words to convert many unlawful acts into antitrust violations. The antitrust laws were never meant to be a panacea for all wrongs.

contract or tort, is not before us in this case. Whether a cause of action exists under the antitrust laws is the sole issue in this case. In that connection it is well settled that tortious conduct against one engaged in interstate commerce or which has an effect on interstate commerce does not automatically constitute a violation of the Sherman Act.

Like rulings have been made in numerous recent district court cases.[14] A particularly cogent district court discussion of the scope of the Sherman Act is found in *Arizona v. Cook Paint and Varnish Co.*, 391 F.Supp. 962 (D.Ariz.), 541 F.2d 226 (9th Cir. 1976), reh. den. There the court dismissed a Sherman Act complaint alleging that the defendant-competitors had conspired to engage in false advertising and thus had constructively fixed their prices. Relying on the *Apex Hosiery* case discussed above, the court set forth the "strong policy considerations" relating to federal-state relations[15] which supported dismissal of the Sherman Act claim:

> The conduct alleged here, of course, would be clearly actionable under state law as a tort of misrepresentation. If conspiracies to misrepresent, such as the instant one, are deemed conspiracies in restraint of trade under the Sherman Act, a large area of state law would be subsumed under the federal antitrust laws. The Supreme Court has indicated that this is an important consideration in determining the coverage of the Sherman Act: "The maintenance in our federal system of a proper distribution between state and national governments of police authority and of remedies private and public for public wrongs is of far-reaching importance. An intention to disturb the balance is not lightly to be imputed to Congress." *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 513, 60 S.Ct. 982, 1002, 84 L.Ed. 1311 (1940). The availability of proceedings under Section 5 of the Federal Trade Commission Act fully vindicates any federal interest in preventing the type of conduct alleged here. It is most appropriate, therefore, to leave to state tort law the private redress of any injury suffered as a result of that conduct. 391 F.Supp. at 970 (footnote omitted).

These principles are equally applicable here. It is clear that the sole thrust of plaintiffs' claim is that they were misled into not claiming the surplus due them under the Uniform Commercial Code when the dealer from whom they originally purchased the vehicle actually re-sold it "in the normal course of free and open competition" (¶ 10(c) of complaint). Under the factual allegations of the complaint, stripped of their boilerplate Sherman Act allegations, plaintiffs may be asserting a wrong and may have a common law remedy by way of a tort or contract action, but it is clear that defendants' alleged conduct was neither aimed at nor had the effect of restricting competition.

Plaintiffs do not claim that they could not obtain financing, or that the terms of their financing were artificially onerous, because defendants had restricted the competition of banks or other financing institutions. Nor do they complain about their financing contract with the dealers or with FMCC. Rather, their only complaint is that they were defrauded of one of the benefits of the financing contract. Accordingly, the

---

14. See *ATI, Inc. v. Ruder & Finn, Inc.*, 1976-1 Trade Cas. ¶ 60,778 (S.D.N.Y. March 4, 1976); *Searer v. West Michigan Telecasters, Inc.*, 381 F.Supp. 634 (W.D.Mich.1974), aff'd 524 F.2d 1406 (6th Cir. 1975); *W. T. Grant Co. v. Christensen*, 1975-1 Trade Cas. ¶ 60,324 (S.D.N.Y. May 9, 1975); *Roth Office Equipment Co. v. GF Business Equipment Co.*, 1975-2 Trade Cas. ¶ 60,563 (S.D.Ohio Oct. 16, 1976); *Arizona v. Cook Paint and Varnish Co.*, 391 F.Supp. 966 (D.Ariz., appeal docketed, No. 75-1232, 9th Cir., Jan. 29, 1975); *Kemp Pontiac-Cadillac, Inc. v. Hartford Automobile Dealers' Ass'n*, 380 F.Supp. 1382, 1388 n. 8 (D.Conn.1974); *B & B Oil & Chemical Co. v. Franklin Oil Corp.*, 293 F.Supp. 1313 (E.D.Mich.1968).

15. The Supreme Court has recently reiterated its concern that the distribution of authority between the federal and state governments set forth in the Constitution be maintained and enforced. *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); see also *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

complaint confines its damage claim to damages suffered "in the amount of the surplus thus fraudulently converted by defendant Guy Motors Inc. and/or the defendant Ford Motor Credit Company" (¶ 12 of complaint).

Likewise, plaintiffs make no claim that they were harmed because they were in the market to purchase repossessed automobiles and that the defendants restricted that market.[16] In fact, they affirmatively allege that, pursuant to the conspiracy or combination alleged, the dealer co-defendants "*actually* sold" the repossessed vehicles "in the normal course of free and open competition" (¶ 10(c) of complaint). No disruption in the normal play of competition in interstate commerce is here involved.

An examination of the five particulars of plaintiffs' restriction of competition allegations (¶ 11 of complaint) reveals that none rises to the level of a federal antitrust claim. Paragraph 11(a) merely asserts that defendants' practices created false and misleading impressions inducing inaction on plaintiffs' part to their detriment. As previously shown, these allegations state no cause of action under the Sherman Act.

Paragraph 11(b) alleges that by falsely designating the transfer of title of the repossessed vehicle from FMCC to the dealer as a "sale," the defendants have conspired to fix the resale price of repossessed vehicles. But plaintiffs admit that the "*actual* sale" of the repossessed vehicle occurs when the dealer transfers it to third parties (¶ 10(c) of complaint), and indeed the Uniform Commercial Code so provides as a matter of state law. *See* UCC § 9–504(5), S.C.Code § 10.9–504(5), which provides as follows:

(5) A person [i. e., the dealer] who is liable to a secured party under a guaran-

ty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party [i. e., FMCC] or is subrogated to his rights has thereafter the rights and duties of the secured party. *Such a transfer or collateral is not a sale or disposition of the collateral under this Article.* (Emphasis added.)

In short, the transaction between FMCC and the dealer after a car is repossessed is *not* a "sale" and no price, fixed or unfixed, is involved. Calling a horse a cow does not make it a cow. The allegation of price-fixing, on the face of the complaint, is not one of substance.

Paragraph 11(c) of the complaint purports to allege a "boycott and refusal to deal with all other potential purchasers" of repossessed automobiles. But as previously stated, plaintiffs' damage claim relates only to "surpluses from sales of repossessed vehicles" (¶ 12 of complaint). Plaintiffs do not claim that they sought to buy their repossessed vehicles, i. e., they do not claim to be victims of the alleged boycott. In any event, under the alleged "conspiracy" the automobiles are admittedly sold by the "co-conspirator" dealers in the normal course of "free and open competition" (¶ 10(c) of complaint). Such conduct certainly does not constitute a boycott since no one in the marketplace could possibly be injured by such conduct.

Paragraph 11(d) is a mere conclusory allegation that "the defendants have combined, conspired and agreed to restrain trade in the resale of repossessed or surrendered automobiles or other motor vehicles." As such, it adds nothing to the legal sufficiency of the complaint. As stated in *Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972):[17]

---

16. Indeed, such an assertion would be inherently incredible since, having defaulted on their installment purchase contracts and having failed to redeem their vehicles within ten days pursuant to the notice they allege they received (¶ 2(d)(4) of complaint), plaintiffs were clearly not in the market to purchase repossessed automobiles.

17. See also *Central Savings & Loan Ass'n v. Federal H.L.B. Bd.*, 422 F.2d 504, 509 (8th Cir.

1970); *SCM Corp. v. Radio Corp. of America*, 407 F.2d 166, 170 (2d Cir.), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969); *Price v. Hal Roach Studios, Inc.*, 400 F.Supp. 836 (S.D.N.Y.1975); *Adams v. American Bar Ass'n*, 400 F.Supp. 219, 223 (E.D.Pa.1975); *Weiner v. Bank of King of Prussia*, 358 F.Supp. 684, 701–702 (E.D.Pa.1973).

Although the Federal Rules permit statement of ultimate facts, a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal.

Finally, paragraph 11(e) of the complaint charges, again only in conclusory language unsupported by any factual assertions, that defendants are attempting "to monopolize trade and commerce in the financing of new and used automobiles sold by Ford and Lincoln-Mercury dealerships." Plaintiffs do not allege what FMCC's share of this market is, and, in fact, fail to make any effort whatsoever to define the geographical boundaries of this market.

There are at least two independent reasons why the attempt-to-monopolize claim must be dismissed. First, the only factual allegation of the complaint relevant to this claim is the statement that FMCC has agreed "to finance all or substantially all of the automobiles or other motor vehicles sold" by Ford or Lincoln-Mercury dealerships in the Anderson Division (¶ 8 of complaint). Significantly, however, there is no concomitant allegation that the *dealers* in question have agreed to finance all vehicles through FMCC.

Thus, the complaint alleges no more than that FMCC has expressed a willingness to do business with the dealers should the latter choose to do so. It is, of course, the rare businessman who fails to make such expressions to potential customers. Such conduct without more clearly provides no support for a cause of action under the Sherman Act. In the absence of any other supporting factual allegations relevant to this claim, the complaint is manifestly insufficient.

The second crucial deficiency of the attempt-to-monopolize allegation under paragraph 11(e) is that plaintiffs' damage claim concerns only the surpluses resulting from sale of their vehicles following repossession (¶ 12 of complaint). *See* p. 12, *supra.* Plaintiffs do not claim to have been injured by the terms of their original financing transaction with the defendant dealers or

with FMCC. Assuming *arguendo* that FMCC has attempted or even succeeded in monopolizing the trade of financing new and used automobiles in some market, the only harm that arguably would result to persons in plaintiffs' alleged class would be unfavorable and burdensome credit requirements, *e. g.*, an inability to obtain credit or higher interest rates, etc. No such claim is here made.

Obviously the conclusory allegations of attempt-to-monopolize, like the other Sherman Act claims, have been thrown into this complaint only as a cloak by which to seek to obtain the jurisdiction of this court and thrice-multiplied damages. The court finds no alternative but to dismiss the complaint.

### III. PLAINTIFFS' CAUSE OF ACTION

Nothing herein contained is designed to, nor is to be used for the purpose of, pre-empting or denying pursuit by plaintiffs, individually or collectively, any action for tort, conspiracy, or other alleged or claimed wrongs or denial in the courts of the State of South Carolina. Therefore, this court does not discuss here the potential there.

The defendant's motion to dismiss is granted, and the Clerk shall enter judgment dismissing the complaint.

AND IT IS SO ORDERED.