**Oma H. HESTER, Jr., Plaintiff,**

v.

**MARTINDALE–HUBBELL, INC., American Bar Association and North Carolina State Bar, Defendants.**

**No. 76–0048–CIV–5.**

United States District Court,
E. D. North Carolina,
Raleigh Division.

May 29, 1980.

Noel Lee Allen, Barringer, Allen & Pinnix, Raleigh, N. C., for plaintiff.

W. F. Womble, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., for defendant Martindale-Hubbell.

John V. Hunter, III, Hunter & Wharton, Raleigh, N. C., for defendant American Bar Assoc.

H. D. Coley, Jr., Raleigh, N. C., for defendant N. C. Bar Assoc.

## MEMORANDUM OF DECISION And ORDER

DUPREE, Chief Judge.

In this antitrust action, plaintiff Hester, an attorney and member of the North Carolina bar, claims he has been unlawfully discriminated against as a result of the advertising policy of defendant Martindale-Hubbell, Inc. According to the plaintiff, Martindale's policy and practice of listing attorneys in its Legal Directory has injured and continues to injure him in the establishment of his law practice. In his six-count complaint, plaintiff contends the American Bar Association ("ABA") conspired with Martindale-Hubbell to restrain trade in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Sections 75–1 and 75–1.1 of the North Carolina General Statutes. Hester further alleges defendant North Carolina State Bar cooperated in and condoned the discrimination against him, and through the adoption and enforcement of DR2–102[1] of the Code of Professional Responsibility, has denied him due process and equal protection of law.

The case is before the court on the recommendation and supporting memorandum of United States Magistrate Logan D. Howell filed August 31, 1979, that Martindale's motion for summary judgment be denied as to all counts. Martindale-Hubbell has filed extensive objections to the Magistrate's findings, conclusions and recommendations.[2] Also before the court is the Magistrate's earlier memorandum and recommendation that the North Carolina State Bar's motion for summary judgment be denied.[3] The parties have filed no response to this recommendation. For the reasons set forth herein, Martindale-Hubbell's motion for summary judgment is allowed, the North Carolina State Bar's motion for summary judgment is allowed and the action against the ABA is dismissed *sua sponte*.

## FACTUAL SETTING

On August 11, 1973, plaintiff wrote Martindale-Hubbell and requested information concerning the publication of his professional card in the biographical section of the 1974 edition of the Martindale-Hubbell Law Directory (Plaintiff's Complaint, Exhibit D). By letter of December 10, 1973, Martindale-Hubbell informed Hester that an investigation undertaken pursuant to his request resulted in the finding that Hester did not have the necessary endorsements to support an "av", "bv" or "cv" rating (Plaintiff's Complaint, Exhibit H).[4] In accord-

1. Prior to its amendment in 1978, *see* Footnote 6 *infra*, DR2–102 provided:

   "(A) A lawyer or law firm shall not use professional cards, professional announcement cards, office signs, letterheads, telephone directory listings, or similar professional notices or devices, except that the following may be used if they are in dignified form:

   "(6) A listing in a reputable law list or legal directory giving brief biographical and other informative data. A law list or directory is not reputable if its management or contents are likely to be misleading or injurious to the public or to the profession. A law list is conclusively established to be reputable if it is certified by the American Bar Association as being in compliance with its rules and standards. . . ."

2. Defendant ABA, while not a party to the summary judgment motion, has filed "comments" to the Magistrate's memorandum and recommendation.

3. Court records reveal that this memorandum was filed March 29, 1978. However, as a result of an inadvertent oversight, it was not docketed or served on the parties until August 8, 1979. The parties were given ten days from the date of service to file written objections pursuant to 28 U.S.C. § 636(b).

4. Martindale's rating system provides for three classifications of legal ability: "a" (very high), "b" (high), and "c" (fair). According to Martindale-Hubbell, no rating of legal ability is published unless the recommendations received also support the "v" portion of the rating, i. e., "av", "bv" or "cv". The "v" is an abbreviation

ance with Martindale's uniform policy of requiring subscribers publishing their professional card in the biographical section of the Directory to have attained either an individual or law firm rating of "av" or "bv," Hester was told that he would appear only in the Directory's geographical section.[5]

## COUNT 1

Plaintiff argues that the combined effect of Martindale's advertising policy and the regulation of legal advertising by the ABA and the North Carolina State Bar constitutes a conspiracy in restraint of trade and a violation of the Sherman Act. This conclusion is supported by Hester's analysis of former DR2–102 of the Code of Professional Responsibility.[6] This disciplinary regulation states that attorneys may advertise in "reputable" law lists and that any law list "certified" by the ABA is conclusively presumed to be reputable. According to Hester, his ability to advertise in the Martindale Directory is subject to the combined regulation and control of Martindale-Hubbell, the ABA and the North Carolina State Bar. Plaintiff asserts the Section 1 conspiracy in restraint of trade is further evidenced by the alleged failure of the ABA and the North Carolina State Bar to "act on

the merits" of his complaint against Martindale-Hubbell.

■ Section 1 of the Sherman Act states that:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . ." 15 U.S.C. § 1.

Essential to jurisdiction over a Section 1 cause of action is that the conspiracy complained of be in restraint of trade or commerce among the several states. *Gulf Oil Corporation v. Copp Paving Company, Inc.*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974). Thus, the allegedly illegal conduct must constitute either activities that are in the flow of interstate commerce or activities which, though occurring purely on a local level, substantially affect interstate commerce. *Mandeville Island Farms, Inc. v. American Crystal Sugar Company*, 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948); *Harold Friedman, Inc. v. Thorofare Markets*, 587 F.2d 127, 132 (3rd Cir. 1978). Martindale-Hubbell contends plaintiff has failed to show that his law practice is within the flow of interstate commerce or that

for "very high" general recommendation. Ratings are based on confidential recommendations furnished Martindale by lawyers and judges in the city or area where the rated attorney practices.

**5.** Martindale-Hubbell undertakes to list all attorneys practicing in the United States or Canada in the geographical section of the Directory. The entry for each attorney includes his or her name, date of birth, college and law school attended, date of admission to the bar, office address, and in many instances the rating of the attorney. Beginning with the 1978 edition, it is no longer necessary to have a rating in order to enter a subscription for "professional representation" in the geographical section. As additional information, attorneys may now list in the geographical section their cable address, telephone and telex number, names of partners and associates, fields of law in which the lawyer or firm concentrates, specialties of practice, and the names of not more than ten clients or references.

The biographical section, on the other hand, includes such information as an attorney's legal

publications, membership in legal fraternities, societies and associations, awards, type of practice and a listing of representative clients.

**6.** This section of the Code of Professional Responsibility was amended by the North Carolina Supreme Court on February 24, 1978. The amended DR2–102 states in Section (A)(5):

"(A) A lawyer or law firm shall not use or participate in the use of professional cards, professional announcement cards . . . law lists, legal directory listings . . . except that the following may be used if they are in dignified form:

"(5) A listing in a reputable law list, legal directory, or a directory published by a state, county or local bar association, giving brief biographical and other informative data. A law list or any directory is not reputable if its management or contents are likely to be misleading or injurious to the public or to the profession. . . . N.C.G.S. Volume 4A, Appendix VII, DR2–102(A)(5) (1979 Cum. Supp.).

it has a substantial effect on interstate commerce.

Responding to defendant Martindale's motion, plaintiff argues that the burden is upon the moving party to show that there is no effect on interstate commerce. Hester rests upon his initial assertion that interstate commerce has been affected and claims Martindale has offered no evidence to the contrary. Paragraph 20 of the complaint clearly focuses upon the effect of defendants' alleged illegal acts upon Hester's business and the "advertising of professional legal services available for‚ sale and delivery to the public in the State of North Carolina and particularly in the 25th Judicial District . . . ." While this allegation pertains to purely local impact, Hester has stated in paragraph 9 that the Directory is published and distributed in interstate commerce in such a manner and with contents calculated to restrain interstate commerce by affecting the sale and delivery of legal services. While Martindale has focused upon plaintiff's law practice and argued that he must show its effects on interstate commerce, Hester contends the pervasiveness of the Martindale Directory within the legal profession and its impact upon the availability of legal services is sufficient to establish the requisite effect on interstate commerce.

The proper perspective from which to judge the affecting commerce issue was reiterated in *Greenville Publishing Company, Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 396 (4th Cir. 1974):

"[D]efendants urge us to hold that the only relevant inquiry is the *victim's* involvement in interstate commerce. . . [T]he Supreme Court has not endorsed this theory. . . . The Supreme Court's approach strongly implies that the Sherman Act protects the market as well as the victim."

*See Page v. Work*, 290 F.2d 323 (9th Cir. 1961). Granting plaintiff an exceptionally

liberal interpretation of his complaint, the court finds that it cannot hold the alleged unlawful acts do not affect interstate commerce as a matter of law. This finding is made solely for purposes of the instant motion.

Section 1 applies to combinations, contracts and conspiracies, express or implied, which restrain interstate trade. *United States v. Parke, Davis & Company*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). Essential to such a violation of the antitrust laws is an agreement or combination "the purpose and effect of which is restraint of trade and suppression of competition." *Viking Theatre Corporation v. Paramount Film Distributing Corporation*, 320 F.2d 285, 293 (3d Cir. 1963). In the present case, plaintiff argues that the defendant bar associations, through their codes of professional responsibility and the ABA's process of law lists certification,[7] have conspired with Martindale-Hubbell to exclude him from advertising in the biographical section of the Directory and thereby unlawfully restrained interstate trade. According to Hester, the conspiracy is further evidenced by the fact that (a) for thirty years prior to 1974, the ABA provided its membership list to Martindale free of charge;[8] (b) the ABA has been provided yearly copies of the Directory without cost; and (c) ABA members are so designated in the Directory.

In *Harold Friedman, Inc. v. Kroger Company*, 581 F.2d 1068 (3d Cir. 1978), the Court of Appeals for the Third Circuit analyzed the Supreme Court's opinion in *Albrecht v. Herald Company*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), for guidance in determining when the concerted activity or conspiracy requirement of Section 1 has been met. The *Friedman* court identified the following crucial factors to test for "concerted activity" within the meaning of the Sherman Act:

"(1) [A]ll members of the combination knew of the defendant's purpose to re-

---

**7.** ABA ended this practice of certification on February 10, 1978. *See* Affidavit of Robert I. deSherbinin at 5–6.

**8.** In 1974, a written contract was executed between the ABA and Martindale which provided that Martindale would pay to the ABA fifty cents per member for the Association's list.

strain trade; (2) at least two members of the *combination* benefited by the restraint of trade and, in that sense, shared a common purpose in restraining trade; (3) the agreement by two members of the combination actually restrained trade, as opposed to merely facilitating the restraint; and (4) at least two members of the combination intended to restrain trade." *Harold Friedman, Inc.*, 581 F.2d at 1073.

*See also Quality Mercury, Inc. v. Ford Motor Company*, 542 F.2d 466 (8th Cir. 1976), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977); *Cartrade, Inc. v. Ford Dealers Advertising Association*, 446 F.2d 289 (9th Cir. 1971), *cert. denied*, 405 U.S. 997, 92 S.Ct. 1249, 31 L.Ed.2d 465 (1972).

■ Applying the *Friedman* analysis in the present case: first, Hester makes a sweeping accusation that Martindale-Hubbell "in combination and conspiracy with the American Bar Association . . . planned, directed, controlled, published, and distributed . . . the Martindale-Hubbell Law Directory in a form and manner and with contents which were calculated to, and did, restrain trade and commerce . . . ." The alleged restraint of trade is purportedly a direct consequence of Martindale's scheme for rating attorneys and its advertising policy. The gravamen of plaintiff's complaint is that as a sole practitioner without an "av" or "bv" rating, he is denied admission to the biographical section of the Martindale Directory; while attorneys with like experience, expertise and the same individual rating but who are associated with a law firm holding the "av" or "bv" rating are permitted to have published their professional data in the Directory's biographical section. It is uncontroverted that neither the ABA nor the North Carolina State Bar have at any time sought to influence, direct or control Martindale's efforts to rate attorneys. Nor does plaintiff allege that either bar association has assisted in the establishment of Martindale's advertising policies. The ABA's act of certifying the Martindale Directory as a reputable general legal directory warrants no finding that either bar association knew of Martindale's alleged purpose to restrain trade. The composite of the ABA's alleged conspiratorial acts, i. e., receipt of a complimentary copy of the Directory, providing of the association's membership list to Martindale, finding that Martindale's refusal to publish plaintiff's professional card did not violate the Code of Professional Responsibility and certifying the Directory as reputable, is wholly disassociated with the advertising restrictions alleged to have caused Hester injury. The court's review of the record discloses no evidence that the defendant bar associations knew of any alleged purpose on the part of Martindale to restrain trade.

Second, while plaintiff points to the fact that the ABA has received complimentary copies of the Directory, he makes no allegation that either the ABA or the North Carolina State Bar benefited by the alleged restraint of trade.. Interestingly, the court notes that defendant Martindale would conceivably reap a financial *benefit* if it were to adopt a less restrictive advertising policy and comply with plaintiff's demands. The presence of a common purpose to restrain trade is not evidenced in the instant action by a benefit to the defendant bar associations.[9]

Third, the *agreement* by the defendants must actually restrain trade as opposed to merely facilitating the restraint. As previously held, any agreement between the defendant bar associations and Martindale-Hubbell was wholly extraneous to the policies causing plaintiff's dissatisfaction. *Cf., Farnell v. Albuquerque Publishing Company*, 589 F.2d 497, 500 (10th Cir. 1978) (an antitrust plaintiff must not only show injury to his business or property, but he must

---

**9.** The court is well aware that a finding of benefit to a co-defendant is unnecessary to establish *liability. Duplan Corporation v. Deering Milliken, Inc.*, 594 F.2d 979 (4th Cir. 1979). Nevertheless, the presence or absence of a perceived benefit to a defendant in an antitrust action for restraint of trade is a viable factor to consider in making the initial determination of whether or not an actionable conspiracy exists. *See Albrecht*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *Harold Friedman, Inc. v. Kroger Company*, 581 F.2d 1068 (3d Cir. 1978).

show the injury directly resulted from a violation of the antitrust laws). While the ABA's act of certification might be said to have directed plaintiff to Martindale-Hubbell as an available advertising resource, this lawsuit has resulted because Martindale refused to permit Hester to publish the data he desired in the section which he wished to appear. Plaintiff has alleged no conspiracy between the parties which affected the latter determinations.

Finally, the court notes that an extremely strained interpretation of the record is necessary to even speculate that the defendant bar associations intended to restrain trade by the actions alleged. Plaintiff does not argue that the associations have erred in the certification process and thereby unlawfully restricted his access to law lists and legal directories. He merely asserts that when examined in light of Martindale's advertising policies, the associations' acts show an intention to restrain trade.

The court concludes that the conspiracy or concerted activity requirement for a Section 1 violation is missing in the present case. What is present is simply a unilateral refusal to deal based on predetermined and announced criteria.

In *United States v. Colgate & Company*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919), the Supreme Court held:

"[T]he [Sherman] act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell."

Although the now well-known *Colgate* doctrine has been frequently criticized, it remains viable in antitrust law. Areeda, *Antitrust Analysis* ¶¶ 524–31 (2d Ed. 1974); 41 A.L.R.Fed. 175 (1979), and cases cited therein. The circumstances of the present

case direct the court to the undeniable conclusion that Martindale-Hubbell has acted within its rights as a private business. Martindale has defined its marketing policy and applied it uniformly. The fact that plaintiff may be unable to utilize Martindale's services in the manner and to the extent which he desires does not place Martindale in violation of the antitrust laws. *See Fuchs Sugars and Syrups, Inc. v. Amstar Corporation*, 602 F.2d 1025 (2d Cir. 1979); *McElhenney Company v. Western Auto Supply Company*, 269 F.2d 332 (4th Cir. 1959).[10]

### COUNT 2

■ Hester claims that Martindale-Hubbell, with the knowledge, cooperation and approval of the ABA, monopolizes or attempts to monopolize commerce in violation of Section 2 of the Sherman Act. 15 U.S.C. § 2. This allegation is based on plaintiff's assertion that he has no alternative legal publication, which is comparable to the Martindale Directory in depth, comprehensiveness and scope of distribution, in which to have his professional card published. He argues his Section 2 claim is further supported by the facts that Martindale is the only attorney listing wherein attorneys are rated and the only list classified as a "general legal directory" by the ABA.

The manufacture and marketing of a product of unique character and exceptional quality does not render the manufacturer or those who deal with him monopolists. The Supreme Court has expressly held that the offense of monopoly under Section 2 of the Sherman Act has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident." *United States v. Grinnell Corporation*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778

---

**10.** The parties have exhaustively argued *Lorain Journal v. United States*, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951), on the issue of Martindale's claimed unilateral refusal to deal. *Lo-* rain did not abrogate the *Colgate* doctrine, however, and the court finds *Lorain* factually distinguishable from the instant action.

(1966). Generally, as stated in *Summey v. Ford Motor Credit Company*, 449 F.Supp. 132, 137 (D.S.C.1976), the terms "restraint of trade" and "monopolization" as used in the Sherman Act "encompass only practices which are principally intended or designed to restrict free and open competition in the marketplace." Assuming *arguendo* that the Martindale-Hubbell Directory is the most prominent and widely-recognized listing of attorneys, the court finds no evidence that this market position was unlawfully attained or has been unlawfully maintained by defendant Martindale.[11] *See generally Dougherty v. Continental Oil Company*, 579 F.2d 954, 962 (5th Cir. 1978).

Plaintiff has not only neglected to define the target market, but he has totally failed to allege any unlawful actions which defendant Martindale has taken to achieve its enviable market position. Put simply, plaintiff would have the court find that once a publisher achieves a commanding position in the relevant market, he may no longer adhere to uniform policies restricting the clients with whom he will deal. Such a conclusion is directly at variance with the letter and intent of the Sherman Act. Finding no evidence of an intent to monopolize within the meaning of the Sherman Act on the part of Martindale-Hubbell, the ABA or the North Carolina State Bar, Count 2 is dismissed.

## COUNT 3

■ In this count, Hester complains that Martindale-Hubbell "in combination, conspiracy, contract, or concert with defendant American Bar Association, planned, directed, controlled, published and distributed the Martindale-Hubbell Law Directory . . in a form and manner and with contents which restrained trade or commerce within the State of North Carolina . . . ."

11. Hester has not alleged and the court detects no evidence that Martindale-Hubbell has acted to prevent other law lists and legal directories from establishing an identical rating system and publication format.

12. N.C.G.S. § 75–1 (1975 Repl. Vol.) provides in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy in

(Plaintiff's Complaint ¶ 27.) All of these actions were allegedly taken in violation of N.C.G.S. § 75–1.[12]

As noted by the Supreme Court of North Carolina, Section 75–1 "was based upon section one of the Sherman Act . . ." and "the body of law applying the Sherman Act, although not binding upon this court in applying G.S. § 75–1, is nonetheless instructive in determining the full reach of that statute." *Rose v. Vulcan Materials Company*, 282 N.C. 643, 194 S.E.2d 521, 530 (1973). *See also Nash County Board of Education v. Biltmore Company*, 464 F.Supp. 1027 (E.D. N.C.1978). Having previously found no facts supporting a conspiracy or concerted activity in restraint of trade and in violation of the Sherman Act, the court similarly finds no facts supporting a violation of N.C. G.S. § 75–1.

## COUNT 4

■ Hester next alleges defendants Martindale-Hubbell and the ABA have violated N.C.G.S. § 75–1.1[13] by engaging in unfair or deceptive practices in the control, publication and distribution of the Martindale Directory. In light of the court's previous findings that (1) there is no evidence of a conspiracy between the defendants, and (2) Martindale-Hubbell has acted within its unilateral right to establish uniform publication policies, the allegations of Count 4 are likewise without merit and are dismissed.

## COUNTS 5 AND 6

According to Hester, the North Carolina State Bar has cooperated in and condoned the alleged discrimination against him by the adoption and enforcement of DR2–102 of the Code of Professional Responsibility.

restraint of trade or commerce in the State of North Carolina is hereby declared to be illegal."

13. N.C.G.S. § 75–1.1 (1979 Cum.Supp.) provides in relevant part: "(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

In addition, plaintiff claims the North Carolina State Bar has refused to consider his complaints with respect to the selling of advertising in the biographical section of the Martindale Directory. These actions allegedly infringe Hester's rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 19, of the Constitution of North Carolina. Hester prays for injunctive and declaratory relief from the North Carolina State Bar. Specifically he requests the court to declare DR2–102(A)(6) in violation of the Fourteenth Amendment and to direct the North Carolina State Bar to evaluate the merits of his complaint against Martindale-Hubbell. The court has noted that DR2–102 was amended subsequent to the filing of this action and the certification process of which plaintiff complains was abolished. Consequently, the request for declaratory relief is moot.

Regarding plaintiff's allegation that the North Carolina State Bar refused to consider his complaint, a letter attached to the complaint as Exhibit J explains the State Bar's position. After Hester's complaint was considered by the council and the ethics committee, Secretary James informed him that his complaint would properly lay before the ABA and not the North Carolina State Bar. *Id.* Plaintiff's conclusory allegation of a violation of his constitutional rights is unsupported by the record and is dismissed.

## CONCLUSION

The court is acutely aware that summary judgment should be used sparingly in complex antitrust litigation. *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). However, Rule 56 should not "be read out of antitrust cases," *First National Bank v. Cities Service*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), and "the question whether summary judgment is appropriate in any case is one to be decided upon the particular facts of that case . . . ." *Id.* at 259, 88 S.Ct. at 1577–78. *See Tripoli Company v. Wella Corporation*, 425 F.2d

932 (3d Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970). The court has determined that the present action is an appropriate one for the exercise of summary procedures, and accordingly it is now

ORDERED that:

1. Defendant Martindale-Hubbell, Inc.'s motion for summary judgment be allowed;

2. The motion of defendant North Carolina State Bar for summary judgment be allowed, and

3. The action dismissed, with prejudice, as to defendant American Bar Association.