**CONSUL, LTD., Plaintiff,**

v.

**TRANSCO ENERGY COMPANY, formerly known as Transco Companies, Inc. and Transcontinental Gas Pipe Line Corporation, Defendants.**

No. C–82–574–WS.

United States District Court,
M.D. North Carolina,
Winston-Salem Division.

Oct. 31, 1984.

Don R. House and Mary Ward Root, Winston-Salem, N.C., Dudley H. Chapman, Washington, D.C., for plaintiff.

Charles F. Vance, Jr. and W. Andrew Copenhaver, Winston-Salem, N.C., John L. Jeffers, Houston, Tex., for defendants.

## MEMORANDUM OPINION

ERWIN, District Judge.

This matter is before the court on defendants' motions for partial summary judgment on plaintiff's cause of action under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. For the reasons which follow, the court will allow both of the defendants' motions.

### The Parties

The plaintiff Consul, Ltd. (Consul), is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Winston-Salem, North Carolina. During all pertinent times herein, Consul was engaged in, among other things, the business of developing, locating, acquiring, and programming natural gas procurement for a number of major industrial clients. Consul began this aspect of its business in response to the shortage of natural gas experienced by industrial users in North Carolina and other southern states in the mid-1970's. It was the goal of Consul to develop ultimately a program through its corporate clients of joint-venture exploration and development of natural gas sources to assure those industrial users of sufficient quantities of natural gas for future plant operations.

Transco Energy Company (Transco) is a corporation organized and existing under the laws of the State of Delaware, with its national offices at Houston, Texas. The stockholders approved a change in the name of this corporation from Transco Companies, Inc. to Transco Energy Company at the annual meeting held in May 1982.

Transcontinental Gas Pipe Line Corporation (Pipe Line) is a corporation organized and existing under the laws of the State of Delaware, with its national offices at Houston, Texas. Pipe Line is registered to do business in the State of North Carolina. Pipe Line is a wholly owned subsidiary, and the principal subsidiary of Transco.

### Statement of the Case

This case was filed on May 24, 1982 alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. The defendants answered the complaint on July 14, 1982 and filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The grounds for the motion were that the complaint failed to state a claim against defendants Transco Energy Company (Transco Energy) and its wholly owned subsidiary Transcontinental Gas Pipe Line Corporation (Transco), in that: (1) Transco Energy and Transco do not possess the duality required to form an offense under Section 1 of the Sherman Act; (2) Transco and Transco Energy function as a single unit; and (3) Transco and Transco Energy do not compete or hold themselves out as competitors in any market anywhere.

On August 3, 1982, plaintiff filed its memorandum in opposition to the motion to dismiss. Each party filed the necessary brief, and oral arguments were conducted on October 19, 1982. The court allowed defendants' motion to dismiss, but permitted plaintiff thirty days to amend its complaint. Plaintiff filed its amended complaint on November 19, 1982, and on December 17, 1982, defendants renewed their motion to dismiss. The grounds being in essence the amended complaint neither alleges that a violation of Section 1 of the Sherman Act occurred nor states who the participants in the alleged conduct were. (Pleading No. 31.) Plaintiff responded to this motion, the parties each filed the necessary briefs, and on February 24, 1983, the court denied defendants' motion to dismiss. The defendants filed their motions for partial summary judgment on April 20, 1984. The plaintiff responded on May 15, 1984. Arguments were heard on May 29, 1984, at which time, the court allowed both sides to file an additional memorandum. Because of the apparent complexities of this case, the court will set forth both

motions of the defendants as follows as they appear in the record.

### Rule 56, Sherman Act, Section 1 Motion

1. Consul's claim under Section 1 of the Sherman Act arises out of Transco's alleged failure to assist Consul in competing against Transco for the purchase of a certain gas supply, The Greens Creek Field in Mississippi. After a seesaw of expectations and hopes in the midst of a changing regulatory environment, Consul's plans (as a broker for its clients) to purchase and resell the Green's Creek gas pursuant to certain federal emergency regulations collapsed, and Transco purchased this gas supply based on perceived long-term needs for its entire pipeline system. Nothing in the Sherman Act or any other law obligated Transco to promote or even assist Consul's competing business schemes, *although Transco did assist Consul at the request of certain suppliers and purchasers*. Indeed, the Sherman Act *encourages* competition, and Transco remained free to promote its own interests in obtaining gas from Greens Creek. In short, Transco's competition for the Greens Creek gas is fully protected by law, and certainly no cause of action arises under the federal antitrust laws against such competition.

2. In an effort to dodge the basic facts of the case—which are simply that after both Transco and Consul had long tried to buy this gas, the Greens Creek owners decided, based on federal regulatory developments, that the only sensible solution was to sell to Transco—Consul has embellished its Amended Complaint with florid allegations that its failure to get the Greens Creek gas was the result of an illegal combination in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Specifically, Consul alleges that Transco combined with third parties, including gas producers, gas distribution companies, and industrial end users, to coerce these third parties to boycott Consul.

3. Transco is entitled to summary judgment on this Section 1 claim on the ground that, unless Consul is able under Rule 56(e) to come forward with evidence not previously adduced, there is no evidence to support the existence of any such combination to coerce third parties to boycott Consul, and, indeed, Transco affirmatively denies the existence of any such combination.

Defendants' Motion for Partial Summary Judgment on Consul's Cause of Action Under Section 1 of the Sherman Act at 1–3.

### Rule 56, Sherman Act, Section 2 Motion

1. As stated above in Transco's concurrently filed motion for partial summary judgment with respect to Consul's Section 1 claim, this suit arises out of Transco's alleged failure to assist Consul in competing against Transco for the purchase of a certain gas supply, the Greens Creek Field in Mississippi. Now, in both of its two claims for relief in its Amended Complaint, Consul has charged Transco with monopolizing and attempting to monopolize the purchase of natural gas from various geographic markets in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. In its second claim for relief, Consul added the charge that Transco monopolized and attempted to monopolize the arrangement of purchases of natural gas as well. In brief, Consul alleges that Transco has a "natural monopoly" in the transportation of natural gas in certain areas, and that Transco has used this "natural monopoly" to obtain a monopoly over the purchase and arrangement of purchases of natural gas in various areas, including the Greens Creek Field, all to the injury of Consul. After extensive discovery, however, Consul has failed to develop any evidence tending to prove that it was injured by any actions of Transco that it alleges violated the antitrust laws. Since Consul has come forward with no evidence that Transco caused it any injury, as it must do to recover damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, Transco is entitled to summary judgment on Con-

sul's claims for damages based on Section 2 of the Sherman Act.

2. In paragraph 30 of its Amended Complaint, Consul alleges that the relevant market is (a) the Greens Creek Field in Mississippi, (b) the Holiday Creek Field in Mississippi, and (c) "All other sources of natural gas from which there is no presently economically feasible alternative means of transportation other than Defendants' pipeline and not presently sold or otherwise legally committed to Defendant...." Consul alleges that Transco monopolized and/or attempted to monopolize the purchase of natural gas and the arrangement of purchases of natural gas from these markets. To prove a violation of Section 2 of the Sherman Act, however, Consul must prove that Transco monopolized or attempted to monopolize a *relevant* market. As a matter of law, the market defined by Consul is not a relevant geographic market because its parameters have not been clearly defined by probative evidence and, in any event, the vaguely alleged market is not the competitive arena within which competition for the purchase of natural gas supplies takes place. The market for the purchase of natural gas, at the least, is a nationwide market. The market Consul defines is small relative to the competitive arena and is badly and selectively fragmented. Any Section 2 claim must be predicated on a showing of market power in some relevant market. Transco is therefore entitled to summary judgment on Consul's Section 2 claim on the ground that Consul has developed no evidence of Transco's market share or market power in any relevant geographic market.

Defendants' Motion for Partial Summary Judgment on Consul's Cause of Action Under Section 2 of the Sherman Act at 1–3.

### Background

Prior to the enaction of the Natural Gas Policy Act of 1978, 15 U.S.C. §§ 3301–3432, federal regulation provided that gas sold from a given field for shipment via an interstate pipeline would permanently dedicate that gas to interstate commerce, and, therefore, subjected to federal price regulation. Consul had located natural gas in the Greens Creek Field in Mississippi and felt it could acquire this supply.

Greens Creek also represented a substantial volume of gas that Transco desired to acquire for its pipeline system which traverses property not far from the Green Creek Field, and it delivers gas to customers along the East Coast of the United States. Consul attempted to acquire gas from producers of Greens Creek Field for its North Carolina and Virginia clients. The producers in the Greens Creek Field were anxious to sell their gas, but they did not want to dedicate the field to the interstate system described above.

Transco applied on behalf of one of the gas producers, Hank Harkins, to the Federal Power Commission ("FPC," later changed to the Federal Energy Regulatory Commission "FERC"), for a limited term certificate known as Order 533.[1]

This application was made prior to Consul's contact with the Greens Creek producers and if accepted would have given Transco the ability to purchase gas for a two-year period without dedicating the Greens Creek Field to federal price regulation. The application was denied, and an appeal was taken to the Court of Appeals for the District of Columbia. In the spring of 1978, Consul made overtures to the Greens Creek producers concerning Order 2–68 sales and Order 533 sales of Greens Creek gas to North Carolina and Virginia buyers. Applications were submitted requesting that the 533 sales be permitted. However, the FERC denied these applications. Soon after this, the Natural Gas Policy Act became law. This Act allowed producers of gas to sell their product in interstate com-

---

**1.** FERC Order 533 provided that natural gas could be sold for up to two years in interstate commerce and through an interstate pipeline without becoming subject to FERC jurisdiction and price regulation if such sales are approved by the FERC.

merce without subjecting the source of the gas to federal price regulation. In light of the legislation, the producers withdrew from all contractual arrangements with Consul and entered into agreements with Transco.

### Contentions of Plaintiff

Consul contends that defendants had a negative impact, including causing delay, on a FERC meeting and thereby caused an adverse action by FERC on Consul's two-year 533 application. The plaintiff further contends that the FERC's denial of its 533 application was the result of the anti-competitive behavior of the defendants and thus was a violation of Sections 1 and 2 of the Sherman Act. It is undisputed that Transco agreed to and did file the necessary applications with the FERC. Further, it is undisputed that the FERC denied the 533 application as submitted by Transco on behalf of Consul.

The plaintiff's proof would consist of the testimony of Kenneth B. Wilson, president of Consul, Ltd., and Tenney I. Dean, Jr., vice president of Consul, Ltd., concerning what they heard staff members of the FERC say at an FERC meeting. The defendants contend that the statements proffered by the plaintiff are hearsay and therefore inadmissible.

### Discussion

Rule 801 of the Federal Rules of Evidence provides:

**Rule 801. Definitions**

The following definitions apply under this article:

(a) **Statement.** A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

(b) **Declarant.** A "declarant" is a person who makes a statement.

(c) **Hearsay.** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

The evidence proffered by the plaintiff, if admissible, would show that the FERC staff members wanted to preserve gas from a source known as the Greens Creek Field for Transco. Greens Creek represented a substantial volume of gas which Transco desired to acquire for its pipeline system. In other words, the matter asserted would be that the FERC wanted to save Greens Creek gas for Transco. Two examples of the evidence which the plaintiff proffers are in the form of affidavits of Mr. Wilson and Mr. Dean. Mr. Wilson states in his affidavit:

12. I was present at the FERC staff conference on November 1. Some of my recollections regarding that staff conference were elicited by Mr. John Jeffers during my deposition. I heard the commissioners question the staff on the following points: "These industrial users are qualified to make 533 purchases, aren't they?" "What's wrong with the price?", "Won't the price of this gas jump from $1.85 to $2.25 within a month because of the new legislation?" I observed at the meeting was that [sic] the staff did not want the applications to be approved, but instead wanted the gas to go to Transco for system gas. The commissioners, however, were concerned about the critical need of the high-priority industrial users. At the point (at the last minute before adjournment) when it became obvious that the commissioners were going to vote for approval, the staff raised the issue of the intrastate price of gas within Mississippi. The information they reported to the Commission was erroneous and contradicted in the affidavits contained within the 533 applications.

Wilson Affidavit at 8, ¶ 12.

Mr. Dean states in his affidavit:

6. I was present at the staff conference on November 1, 1978. The initial staff member's statement to the Commission regarding our clients' applications was, "These applications concern the Greens Creek gas which we have seen before that Transco should be getting.

We disapprove of these applications." One of the commissioners immediately asked why the applications should be disapproved since the users were qualified and the gas prices would increase significantly within a matter of thirty days. The staff did not responde [sic] directly to this query, but indicated their belief that the industrial clients should look elsewhere for gas and that the Greens Creek gas should be made available to the interstate market through Transco at the much higher NGPA rate of $2.25 per mcf, an increase of 40 cents per mcf over the contract price....

Dean Affidavit at 5, ¶ 6.

A statement made out of court is hearsay if it is offered for the truth of the matter asserted therein. Framing this case in terms of Rule 801, the "matter asserted" was that the FERC staff wanted to preserve the gas for Transco. The question is whether the assertion is true. In other words, whether or not Transco influenced the FERC's staff becomes the pivotal question. The statements of Dean and Wilson go to the heart of the matter. They are not proffered only to show that the statements were made or to show that the statements were false. Instead, they are proffered to show that the FERC felt that the gas was reserved for Transco.

■■■ Inadmissible evidence cannot defeat a motion for summary judgment. As stated in *Broadway v. City of Montgomery,* 530 F.2d 657 (5th Cir.1976):

The district judge was of the opinion that the conversation between Terry and Crosland was cloaked with privilege and therefore inadmissible. We need not reach the issue of privilege, inasmuch as Crosland's testimony consisted wholly of hearsay which would not be competent evidence at trial....

The obvious function of summary judgment is to avoid a useless trial. Defendants have made a convincing showing that no genuine issue as to any material fact exists and that they are entitled to judgment as a matter of law; plaintiffs, on the other hand, have failed to come forward with the necessary countervailing evidence to defeat summary judgment.

*Broadway,* 530 at 661 (footnotes and citations omitted).

No admissible evidence exists with regard to the events leading to the FERC denial of Transco's application on behalf of Consul for 533 sales. In addition, Consul has failed to adequately allege that Transco's actions caused the FERC to delay its decision until just before the Natural Gas Policy Act became law.

■■■ This court is well aware of the principle that summary judgment should be used sparingly in antitrust cases. However, this court is also cognizant of the recent cases which have approved of summary judgment as an appropriate method of disposing of antitrust cases. "Rule 56 should not 'be read out of antitrust cases.'" *Hester v. Martindale-Hubbell, Inc.,* 493 F.Supp. 335, 342 (E.D.N.C.1980) (quoting *First National Bank v. Cities Service,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)), *aff'd,* 659 F.2d 433 (4th Cir.1981). It is well settled that a plaintiff, in order to avoid summary judgment in a case arising under the Sherman Act, must "aver significant probative facts in support of the allegations contained in the complaint, especially in light of defendants' specific averments to the contrary." *Terry's Floor Fashions v. Burlington Industries,* 568 F.Supp. 205, 209–10 (1983). This statement of the law is applicable to both Section 1 and Section 2 Sherman Act claims. Consequently, the plaintiff's failure to present any sustainable issue of fact with regard to the conspiracy allegation as well as its failure to proffer any admissible evidence concerning a causal link between Transco's behavior and Consul's failure to receive the benefit of Section 533 sales, give rise to the possibility of granting summary judgment to the defendants. This court is of the opinion that summary judgment is appropriate in this case.

The court will enter an Order simultaneously herewith disposing of a part of this

action in accordance with this Memorandum Opinion.