SOUTHERN PINES CHRYSLER–PLYM-OUTH, INC., d/b/a Duffield & Barbour, Inc., Plaintiff-Appellee,

v.

CHRYSLER CORPORATION, Defendant-Appellant,

United States of America; Motor Vehicle Manufacturers Association of the United States, Inc., Amicus Curiae,

and

Chrysler Credit Corporation, Defendant.

SOUTHERN PINES CHRYSLER–PLYM-OUTH, INC., d/b/a Duffield & Barbour, Inc., Plaintiff-Appellant,

v.

CHRYSLER CORPORATION, Defendant-Appellee,

United States of America; Motor Vehicle Manufacturers Association of the United States, Inc., Amicus Curiae,

and

Chrysler Credit Corporation, Defendant.

Nos. 86–1593, 86–1599.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1987.

Decided Aug. 21, 1987.

Rehearing and Rehearing En Banc Denied Sept. 24, 1987.

Chrysler-Plymouth car dealership to purchase hard-to-market automobiles as a precondition to obtaining fast-selling automobiles for its car lot. Southern Pines brought suit, alleging that Chrysler had violated section one of the Sherman Act, 15 U.S.C. § 1,[1] the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221 *et seq.*, and the North Carolina Unfair Trade Practices Act, N.C.Gen.Stat. §§ 75–1, 75–1.1 and 75–16, and that Chrysler's conduct amounted to common law fraud. The jury returned a verdict for Southern Pines on all but the fraud claim, and assessed damages against Chrysler on each claim. The district court refused to cumulate the damages[2] and entered judgment for Southern Pines in the amount of $900,000, based on a trebling of the $300,000 antitrust verdict, under 15 U.S.C. § 21.

We reverse on the antitrust claim, finding that as a matter of law Southern Pines has failed to establish that Chrysler's "forcing" of unwanted automobiles constituted an illegal tying arrangement. We affirm the award on the Dealers' Day in Court Act claim, holding that the going concern value of a business can be measured as of the end of the fiscal year immediately preceding the trial. Finally, we remand on the state unfair trade practices claim so that the district court can decide whether the trade practice engaged in by Chrysler was "unfair" as defined in that statute. The plaintiff is not entitled to double recovery on any element of damages. If Southern Pines is successful on remand under the state claim, it will be limited to the damage award it receives on that claim, and cannot cumulate that award with its award on the Dealers' Day in Court Act claim.

Gerald M. Rosberg, Washington, D.C. (Joseph Angland, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, Lewis H. Goldfarb, Washington, D.C., on brief), for appellant.

Thomas G. Slater, Jr. (R. Noel Clinard, Christopher J. Mugel, Hunton & Williams, Richmond, Va., William H. Crabtree, Knoxville, Tenn., on brief), for amicus curiae Motor Vehicle Mfrs. Ass'n.

Jerre B. Swann (Matthew H. Patton, Kilpatrick & Cody, Atlanta, Ga., on brief), for appellee.

Douglas H. Ginsburg, Asst. Atty. Gen., W. Stephen Cannon, Deputy Asst. Atty. Gen., Catherine G. O'Sullivan and Donald S. Clark, Dept. of Justice, Washington, D.C., on brief, for amicus curiae U.S.

Before PHILLIPS, ERVIN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

The appellant Chrysler Corporation was found to have coerced the Southern Pines

I.

Southern Pines began operating as a Chrysler dealership in June, 1978, under

---

1. Section 1 of the Sherman Act provides in part that, "[e]very contract ... in restraint of trade ... is declared to be illegal."

2. The parties had specifically agreed before trial that the damages *vel non* from the three statutory claims should not be added together, unless the award from the Dealers' Day in Court Act claim exceeded that from the antitrust claim, the difference to be cumulated.

the control of Joseph Duffield and Gardner Barbour. Pursuant to its agreement with Chrysler, Southern Pines was to purchase a "full line" of Chrysler and Plymouth automobiles and Dodge trucks and vans at wholesale and resell them at retail. The agreement did not preclude Southern Pines from carrying the products of any other automobile manufacturer. In November 1981, shortly before filing this suit, Southern Pines filed for bankruptcy pursuant to Chapter 11, but continued to operate as a dealership for two more years until it entered a liquidation proceeding in 1983.

Substantial evidence was adduced at trial to show that Chrysler had "forced" upon the dealership unwanted, hard-to-sell automobiles in excess of the full-line contract requirement. For example, Chrysler's sales district managers would either state or imply that, for Southern Pines to acquire the desirable, fast-selling automobiles, it would have to purchase the less desirable ones. The consequence of this forcing, appellees contend, was to fill its show rooms with automobiles which it could not sell, and to use up its line of credit from its floor plan financer, thus prohibiting Southern Pines from acquiring automobiles from other manufacturers. Southern Pines argued that the forced purchase of the excess undesirable models as a precondition to obtaining the fast-selling ones constituted a tie-in sale, in violation of the Sherman Act.

During the course of trial, Southern Pines identified sixty-one of the approximately 570 cars it had purchased from Chrysler as hard-to-sell, and thus belonging in the tied product category. Particular models could appear in both the tying and tied product categories, depending on the market conditions and the optional equipment that the individual automobile contained.

The district court excluded from evidence a statement by Mr. Duffield to the effect that he had been told by a Chrysler Credit Corporation employee that he had a responsibility to take the unwanted vehicles. Appellee argues that this statement should have been admitted pursuant to the co-conspirator exception to the hearsay rule, and that its exclusion impaired the appellee's ability to substantiate its fraud claim.

Regarding the elements of damages, the district court had instructed the jury that it could award the appellee the business' "going concern" value as of July 31, 1985, the last day of the fiscal year immediately preceding the trial, even though the appellee had ceased doing business several years prior.

After the trial on the appellee's various theories, the jury found for the appellee and awarded damages of $300,000 on the Sherman Act § 1 claim, $175,000 on the Dealers' Day in Court Act claim, and $175,000 on the state unfair trade practices claim. The jury found for Chrysler on the fraud claim. The district court concluded that the jury intended the two smaller damage awards to be subsumed in the Sherman Act damages. Therefore, it trebled the $300,000 award and entered judgment for $900,000.

## II.

■ The legality of Chrysler's requirement that its dealers carry a full-line representation of its products is not at issue.[3] Rather, the issue presented is whether Chrysler's forcing the appellee to purchase automobiles in excess of the full-line contract requirement constitutes a tie-in in violation of the antitrust laws.

The appellee's tying theory is that the "excess" cars were harder to sell or "hard-to-market" in comparison with the cars delivered by Chrysler to the dealership pursuant to the full-line requirement, which cars

3. The district court had instructed the jury that, "A manufacturer may legally require its dealers to carry an inventory representative of its full line of products.... If the full-line forcing is coupled with quantity purchase or inventory requirements that effectively preclude a dealer from other competitive sources, however, then the supplier would be requiring purchases beyond the full line that consumers expect. It is for you to decide whether [two distinct products] exist here." Trial Transcript at 2190. Moreover at oral argument, counsel for the appellee specified that the appellee did not question the legality of the full-line requirement.

were easier to sell to consumers. These excess or hard to market cars, appellee argues, consisted primarily of models which, due to market conditions and particular product characteristics, such as optional features, were difficult to sell, thus leading Chrysler to condition its delivery to its dealers of saleable, desired automobiles on the dealers' acceptance of the harder to sell units.

"There is, at the outset of every tie-in case, including the familiar cases involving physical goods, the problem of determining whether two separate products are in fact involved." *Fortner Enterprises, Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 507, 89 S.Ct. 1252, 1260, 22 L.Ed.2d 495 (1969) (Fortner I). "[A] tying arrangement cannot exist unless two separate product markets have been linked." *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 21, 104 S.Ct. 1551, 1562–63, 80 L.Ed.2d 2 (1984).

It is evident that the appellee-plaintiff has failed to demonstrate as a matter of law that Chrysler's forced sales involved the linking of "two separate product markets," as required in *Hyde*.[4] Fluctuating differences in the character of demand for particular models within the automobile consumer market do not create separate products.[5] It is obvious on the present record that the market for automobile sales is of a piece, with the fluctuations in demand for any particular model with specific optional equipment and trim design reflecting merely shifting tastes within that product market. Indeed, this conclusion is buttressed by the appellee's proffered description of the tying and tied products: the same car models, depending upon specific optional features and the time of the year, appear frequently on both the tied and tying lists. For example, a two-door Chrysler LeBaron purchased by Southern Pines on September 7, 1979, was placed in the "tied" product category. Two LeBarons of the same style ordered just one month later were specifically omitted from the hard-to-sell, tied category.

If this court were to accept the appellee's tying theory, then the mere forcing by a manufacturer of a single type of product in excess of the agreed amount could rise to the level of a per se antitrust violation. Such forcing, where alleged and proved, is punishable under more common state remedies, including contract and tort remedies, and does not require the powerful prohibition of the antitrust laws. *See, e.g., David R. McGeorge Car Co. v. Leyland Motor Sales, Inc.*, 504 F.2d 52 (4th Cir.1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975); *Kingsport Motors, Inc. v. Chrysler Motors Corp.*, 644 F.2d 566, 572 (6th Cir.1981). The Automobile Dealers' Day in Court Act is the statute designed to protect dealers from injuries attributable to the bad faith of manufacturers. *McGeorge*, 504 F.2d at 55. We reverse the finding of liability on the antitrust claim and instruct the district court to enter judgment for the appellant.

## III.

The district court did not commit error in its instructions to the jury on the proper measure of damages. The court instructed the jury that Southern Pines could be awarded damages for lost profits from the time it went out of business until July 31, 1985, the end of the fiscal year immediately preceding trial, along with the going concern value of the business at that date. The going concern value measures

---

**4.** Once a plaintiff has established that separate products are involved, he must then demonstrate that the seller has market power in the tying product market, and that the effect of the tie-in arrangement is to foreclose a not insubstantial amount of commerce in the tied product market. Because we base this decision on the separate products issue, we do not reach the questions of whether Chrysler had sufficient market power to impose a tie, and whether the alleged tie impacted on a not insubstantial amount of commerce.

**5.** The appellee mistakenly relies on *United States v. Loew's Inc.*, 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962), for the proposition that a different level of demand for products ostensibly selling within the same product market creates separate products. The court in *Loew's*, however, did not address this issue, instead holding that the holder of a copyright has sufficient "market power" to impose an illegal tie.

the value the business would have had at that time but for the defendant's illegal actions. *Fishman v. Estate of Wirtz,* 594 F.Supp. 853, 887–89 (N.D.Ill.1984). The appellant argues that the dealership's going concern value should have been measured as of the day it ceased doing business, and not at July 31, 1985.

The Supreme Court has noted that:

[t]rial and appellate courts alike must also observe the practical limits of the burden of proof which may be demanded of a treble-damage plaintiff who seeks recovery for injuries from a partial or total exclusion from a market; damage issues in these cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts.

*Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969).[6]

Several federal courts have reasoned from the liberality of this principle that the plaintiff may recover his lost profits from the date he ceases doing business until a date at or near trial, and in addition his "going concern value" as of that date. *See Terrell v. Household Goods Carriers' Bureau,* 494 F.2d 16, 23 n. 12 (5th Cir.), *cert. dismissed,* 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974); *see also, Fishman v. Estate of Wirtz,* 594 F.Supp. 853, 887–88 (N.D.Ill.1984). We do not find this approach overly speculative, and we affirm the district court's jury instruction on damages as it relates to all of the plaintiff's theories. Similarly, the careful "yardstick" damages analysis prepared by the plaintiff, which compared the putative profits of the dealership to those of Chrysler Corporation, was not improper under the circumstances. This approach was quite conservative and favorable to Chrysler, because Chrysler enjoyed relatively meager results during this period. We thus affirm the district court on the damages issues.

**IV.**

On cross-appeal, the appellee argues that the district court's exclusion of evidence of a "conspiracy" between Chrysler and Chrysler Credit Corporation, Chrysler's wholly owned subsidiary which engages in floor plan financing, effectively precluded Southern Pines from substantiating its fraud allegations. At issue is testimony by one of the owners of Southern Pines to the effect that a Chrysler Credit employee had told him that, "You have a responsibility to take these vehicles." The district court excluded this statement from evidence for unspecified reasons, but most likely on the grounds that it is hearsay.

To take advantage of the conspiracy exception to the hearsay rule, the party seeking to admit the evidence must at least articulate the scope and relevance of the alleged conspiracy in order to lay the foundation for proving that the conspiracy did indeed exist. Simply offering a bare hearsay statement in evidence does not constitute laying the proper foundation for admission of the evidence. Southern Pines did not explain how the excluded testimony established a conspiracy between Chrysler and its wholly owned subsidiary, Chrysler Credit, and it is questionable if a parent corporation can conspire with its wholly owned subsidiary. See *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). In addition Southern Pines dismissed Chrysler Credit as a defendant prior to trial. There was no error in the exclusion of this statement by the trial judge.

**V.**

Respecting the state unfair trade practices claim, we remand for further proceedings. Under North Carolina law, the judge is to determine whether Chrysler's conduct amounted to an unfair trade practice. *Hardy v. Toler,* 288 N.C. 303, 310, 218

---

6. This generous principle does not obtain regarding the claim under the Dealers' Day in Court Act, which would be governed by usual tort principles. Although we have reversed on the antitrust claim, the appellee could possibly recover on remand on the unfair trade practices claim. Because the unfair trade practices claim encompasses federal antitrust law, the principle reflected in *Zenith Radio* is applicable, and thus we address the damages issue in light of it.

S.E.2d 342, 346–47 (1975). The court below properly put to the jury the question of whether Chrysler committed the acts alleged, but the parties are in disagreement on whether the court decided that Chrysler's conduct was unfair as a matter of law. We feel the district court can best resolve this dispute. If the lower court determines that Chrysler did indeed violate the Unfair Trade Practices Act, thus entitling the plaintiff to a trebling of the damages, then Southern Pines cannot recover on its Dealers' Day in Court Act judgment, because of the fundamental legal principle that there can be only one recovery of damages for one wrong or injury. If Chrysler is found not to be liable on the state claim, then Southern Pines is entitled to its judgment on the Dealers' Day in Court Act theory.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.