**MICROSOFT CORPORATION,**
A Washington corporation,
Plaintiff,

v.

**COMPUTER SUPPORT SERVICES OF CAROLINA, INC., a North Carolina corporation d.b.a. Computer Support Services; and Don Perera, an individual, Defendants.**

No. 3:00CV176–H.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 2, 2000.

Thomas E. Graham, Rebecca K. Gatehouse, Kilpatrick Stockton LLP, Charlotte, NC, for Plaintiff.

Edward T. Hinson, James, McElroy & Diehl, John P. Barringer, Morris, York, Williams, Surles & Brearley, John H. Capitano, Morris York Williams Surles & Barringer, Charlotte, NC, for Defendants.

## *MEMORANDUM AND ORDER*

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on the "Plaintiff Microsoft Corporation's Motion to Dismiss . . . [Defendants' counterclaims]" (document # 14), "Memorandum of Law in Support . . ." (document # 15), "Plaintiff Microsoft Corporation's Motion to Strike . . . [Defendants' Affirmative Defense]" (document # 16), and "Memorandum of Points and Authorities in Support . . ." (document # 17), all filed August 9, 2000. Defendants' ". . . Memorandum of Law in Opposition . . ." (document # 21) was filed September 7, 2000; and "Plaintiff's Reply Brief . . ." (document # 25) was filed September 28, 2000.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and the subject motions are now ripe for resolution. Having carefully considered the parties' arguments, the record, and the applicable authority, the Court will *grant* the Plaintiff's motions.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff Microsoft Corporation ("Microsoft") develops and markets computer software programs ("Microsoft software") recorded on magnetic diskettes and/or CD–ROMs for use on computers, including Microsoft Windows 95 ("Windows 95"), Microsoft Windows 98 ("Windows 98"), and Microsoft Office Pro 97 ("Office Pro 97"). Microsoft claims copyright, servicemark, and trademark rights in that software and accompanying users manuals, reference guides, and screen displays.

Defendant Computer Support Services of Carolina, Inc. ("CSS") is a North Carolina Corporation doing business in Charlotte, North Carolina. Defendant Don Perera ("Perera") is the principal shareholder of Computer Support Services of Carolina, Inc.

Microsoft alleges that on November 30, 1999, the Defendants sold counterfeit Office Pro 97 software to a private investigator, employed by Microsoft for that purpose. Thereafter, on December 28, 1999, Microsoft sent Defendants a cease and desist letter, directing Defendants to discontinue any unauthorized or otherwise illegal use of Microsoft's copyrighted works and marks.

Microsoft alleges that on March 13, 2000, the Defendants again sold counterfeit Office Pro 97 software to a private investigator, employed by Microsoft for that purpose.

The Defendants admit that the two sales were made but contend that they believed in good faith that the Microsoft products they sold were property licensed. CSS also filed counterclaims against Microsoft, alleging (1) violation of § 1 and § 2 of the Sherman Antitrust Act and North Carolina Antitrust Statutes and (2) "foreclosure of the market." It is these counterclaims,

and "copyright misuse affirmative defenses" in the Answers of both Defendants, which are the subject of the instant motions.

## II. *DISCUSSION OF CLAIMS*

### A. *Standard of Review*

"A motion to dismiss under [Fed. R.Civ.P. 12(b)(6) ] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.), *cert. denied,* 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993), *citing* 5A C. Wright & A. Miller, *Fed. Practice and Procedure* § 1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir.1996) (*en banc* ), *citing Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989); *and Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969). *Accord Republican Party of NC,* 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. *See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *Martin Marietta v. International Telecommunications Satellite,* 991 F.2d 94, 97 (4th Cir.1992); *and*

*Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989).

■ However, to survive a Rule 12(b)(6) challenge, claims under the Sherman Antitrust Act must include "allegations covering all the elements that comprise the theory for relief." *United States v. Employing Plasterers Ass'n,* 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618 (1954). *Accord Estate Contr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 220–21 (4th Cir.1994), *quoting Municipal Utilities Bd. of Albertville v. Alabama Power Co.,* 934 F.2d 1493, 1501 (11th Cir.1991) ("A plaintiff must plead sufficient facts so that each element of the alleged antitrust violation can be identified"); *and Nelligan v. Ford Motor Co.,* 262 F.2d 556, 559 (4th Cir.1959) ("[A] complaint which does not allege with reasonable definiteness facts from which the court may infer conduct in restraint of trade of the kind prohibited by the antitrust laws, and from which an inference of public injury may reasonably be extracted, cannot be sustained.")

■ Rule 12(f) of the Federal Rules of Civil Procedure provides that the "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See also Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (purpose of Rule 12(f) motion to strike is "to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues"); *Buser v. Southern Food Service, Inc.,* 73 F.Supp.2d 556, 559 (M.D.N.C.1999); *and Hartsell v. Duplex Products, Inc.,* 895 F.Supp. 100, 101 (W.D.N.C.1995).

■ "[A] motion to strike a defense is appropriately granted when the defense is clearly legally insufficient." *Morrisroe v. Goldsboro Mill. Co.,* 884 F.Supp. 192, 194 (E.D.N.C.1994), *quoting Federal Deposit Insurance Corp. v. British–American Corp.,* 744 F.Supp. 116, 117–18 (E.D.N.C.1990). The sufficiency of a defense depends on the facts supporting it

**950**

that are alleged in the pleading. "When a court considers a motion to strike pursuant to Fed.R.Civ.P. 12(f), matters outside the pleading are not to be considered." *First Financial Sav. Bank, Inc. v. American Bankers Ins. Co. of Florida, Inc.*, 783 F.Supp. 963, 966 (E.D.N.C.1991). Thus, a court should strike a defense as insufficient that is not properly supported by the facts alleged in the pleading.

■ Finally, courts have recognized judicial economy as a proper basis for striking insufficient defenses. *See e.g., Clark v. Milam*, 152 F.R.D. 66, 70 (1993) (court "should grant a motion to strike to avoid unnecessary time and money in litigating invalid, spurious issues.") *Accord Resolution Trust Corp. v. Hecht*, 818 F.Supp. 894, 900 (D.Md.1992) (defenses which "might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted"), *citing United States v. Fairchild Industries, Inc.*, 766 F.Supp. 405, 408 (D.Md.1991); *Spell v. McDaniel*, 591 F.Supp. 1090, 1112 (E.D.N.C.1984); *and S.E.C. v. Gulf & Western Indus., Inc.*, 502 F.Supp. 343, 345 (D.D.C.1980).

Applying these principles, Defendants' allegations clearly fail to state a claim under § 1 or § 2 of the Sherman Antitrust Act. nor, as the Plaintiff argues, does either Defendant state facts sufficient to support a defense of abuse of copyright. Accordingly, the Plaintiff's motions to dismiss and to strike must and shall be granted.

**B. *Counterclaims for Violation of §§ 1 and 2 of the Sherman Antitrust Act***

**1. *CSS Lacks "Antitrust Standing"***

In essence, CSS asks this Court to retroactively declare its alleged theft of Microsoft's intellectual property as "appropriate relief" for Microsoft's alleged monopolistic practices. Although there may be some emotional appeal in the Defendants' argument, a kind of corporate version of the classic Robin Hood story, it lacks a sound legal basis.

■ The United States Supreme Court has long recognized that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 535, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), *quoting Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263, n. 14, 92 S.Ct. 885, 31 L.Ed.2d 184, (1972). Thus, the Supreme Court developed the doctrine of "antitrust standing," which requires a putative claimant to demonstrate it is "a proper party to bring a private antitrust action." *Associated General*, 459 U.S. at 535 n. 31, 103 S.Ct. 897. Pursuant to this doctrine, to demonstrate it is "a proper party," the claimant must allege specific facts establishing injury to its business or property, which occurred by reason of the alleged antitrust violation. *Id.* at 537, 103 S.Ct. 897.[1]

■ To determine whether a claimant has antitrust standing, the Court considers five factors: (1) whether the nature of the claimant's injury is of the type the antitrust laws were intended to forestall (i.e., whether the plaintiff suffered antitrust injury); (2) the directness of the alleged injury; (3) the existence of more direct victims; (4) the risk of duplicative recovery; and (5) the difficulty in apportioning damages. *Associated General*, 459 U.S. at 538–46, 103 S.Ct. 897. *Accord Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977).

---

1. Whether a party has antitrust standing is a pure question of law. *See McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 847 (3d Cir. 1996); *and Eagle v. Star–Kist Foods, Inc.*, 812 F.2d 538, 539 (9th Cir.1987). Therefore, the court can decide it at any time, without need for factual discovery, or determinations by a finder of fact. *See In re Air Passenger Computer Reservation Systems.*, 727 F.Supp. 564, 567 (C.D.Cal.1989).

■ Antitrust injury is "injury to competition beyond the impact on the claimant" in the market within which the defendants compete. *See e.g., Brunswick Corp.* 429 U.S. at 488, 97 S.Ct. 690; *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir.1996) ("antitrust law aims to protect competition, not competitors ... [a court] must analyze the antitrust injury question from the viewpoint of the consumer.... [P]laintiff must prove that challenged conduct affected the prices, quantity or quality of goods or services, not just his own welfare") (citations omitted); *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.1996); *and Conservation Council of Western Australia, Inc. v. Aluminum Co. of America, (Alcoa)*, 518 F.Supp. 270, 279–80 (W.D.Pa.1981).

■ The antitrust injury element must be pled with specificity. Mere conclusions asserting an "elimination of competition" do not suffice. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir.1987). Rather:

> [P]laintiffs must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

*Brunswick Corp.*, 429 U.S. at 489, 97 S.Ct. 690.

■ The allegations of the antitrust counterclaims, viewed in the light most favorable to Defendant CSS, clearly fail to establish the requisite "antitrust injury." Although Defendant CSS claims generally that Microsoft "distorted competition" and that its prices are not "constrained by market forces," there are no facts alleged which could possibly establish the finding of injury to the competitive process which the antitrust laws are intended to protect.

Rather, than the antitrust issues the Defendant seeks to introduce, what is really at issue in this case is Microsoft's legal right to license and distribute its own intellectual property. In this regard, Microsoft clearly has the right to determine who can or cannot reproduce its software (*see* 17 U.S.C. § 106), and the right to determine the fees it will charge its own licensees. *See, e.g., Brulotte v. Thys Co.*, 379 U.S. 29, 33, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964); *and W.L. Gore & Associates, Inc. v. Carlisle Corp.*, 529 F.2d 614, 623 (3d Cir.1976).

■ It is also well settled that a copyright holder may control its intellectual property without violating the antitrust laws. *See, e.g., Service & Training, Inc. v. Data General Corp.*, 963 F.2d 680, 690 (4th Cir.1992) (a limitation on the use of software to repair and maintain specific computer hardware is an "activity that is protected as an exclusive right of a copyright owner"); *and Microsoft Corp. v. BEC Computer, Co.*, 818 F.Supp. 1313, 1316–17 (C.D.Cal.1992) (finding no violation of Sections 1 or 2 of the Sherman Act or § 2 of the Clayton Act (price discrimination) by Microsoft when defendant software infringer alleged unlawful anticompetitive conduct allegedly arising out of Microsoft's attempt to enforce its intellectual property rights). *Accord United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919) ("In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell"). Such rights are indisputable and exclusive. *See Simpson v. Union Oil Co.*, 377 U.S. 13, 24, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964).

Indeed, as emphasized by the Supreme Court:

[T]o condition a copyright upon a demonstrated lack of anticompetitive intent would upset the notion of copyright as a "limited grant of monopoly privileges" intended simultaneously to "motivate the creative activity of authors" and to give the public appropriate access to their work product.

*Professional Real Estate Investors v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 64, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), *quoting Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 429, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).

While Microsoft has the right to control the reproduction and distribution of its intellectual property, under no circumstances does Defendant CSS have any right to acquire or distribute counterfeit, or black market, copies of Microsoft software or to claim injury with respect to the price of such software. Its claim for injury in such a market is not recognized under antitrust law. *See Trans World Airlines, Inc. v. American Coupon Exchange, Inc.,* 682 F.Supp. 1476, 1487 (C.D.Cal.1988), *aff'd in part, vacated in part on other grounds,* 913 F.2d 676 (9th Cir.1990) (finding no legitimate product market and dismissing Sherman Act § 1 counterclaim when counterclaimant alleged anticompetitive effects in an illegitimate "black market" for accumulated frequent flyer mileage awards).

In short, because Defendant CSS has failed to allege "antitrust injury," it lacks standing to bring its antitrust counterclaims against Microsoft. For this reason alone, Plaintiff's motion to dismiss must be granted.

### 2. *Failure to Plead the Essential Elements of a Monopolization Claim*

■ In addition to its failure to establish antitrust standing, Defendant CSS has failed to plead each of the following elements essential to state a valid count for monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2:(1) that Microsoft's alleged unlawful conduct had a substantial effect on interstate or foreign commerce; (2) that Microsoft possessed monopoly power in (3) a relevant market, which requires definition of both a product market and a geographic market; and (4) that Microsoft willfully acquired or maintained that power. *McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 242, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

■ An antitrust claimant may establish the necessary connection with interstate commerce in either of two ways: by demonstrating that the alleged anticompetitive conduct occurred in interstate commerce, or by showing that the conduct, though wholly intrastate, had a substantial effect on interstate commerce. *Greenville Publishing Co. v. Daily Reflector, Inc.,* 496 F.2d 391, 395 (4th Cir.1974). However, Defendant CSS has not presented any factual allegations that show Microsoft's alleged unlawful conduct had a substantial effect on interstate commerce. In fact, the only allegations regarding effect on commerce clearly indicate that Defendant CSS is only claiming an effect on commerce in North Carolina. Specifically, Defendant CSS states: "CSS has suffered direct and proximate injury as a result of Microsoft's restraint of trade or commerce in North Carolina, its unfair methods of competition in North Carolina, and its monopolizing or attempting to monopolize a part of trade or commerce in North Carolina." *See* Counterclaim (document # 9), ¶ 24. These assertions not only fail to plead an effect on interstate commerce, but contradict that required element.

Further, CSS has failed to adequately plead that Microsoft possessed monopoly power in a relevant product and geographic market. Monopoly power is "the power to control prices or exclude competition." *Grinnell,* 384 U.S. at 571, 86 S.Ct. 1698, *quoting United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 391, 76 S.Ct.

994, 100 L.Ed. 1264 (1956). *See also Rutman Wine*, 829 F.2d at 736 (affirming dismissal of a Section 2 claim for failure to state a claim when plaintiff failed to plead allegations of anticompetitive effect in a relevant geographic market); *Conservation Council of Western Australia*, 518 F.Supp. at 279; *and Curvcraft, Inc. v. Chromcraft, Inc.*, 1976 WL 21059, 193 U.S.P.Q. 371, 373 (E.D.Pa.1976) ("defendant has not alleged in its counterclaim what the relevant market is").

Nowhere does Defendant CSS allege anything more than conclusory allegations showing any such power by Microsoft in any particular product market. For example, the Counterclaims omit allegations of the usual indicia of monopoly power, including Microsoft's market presence, the existence of barriers to entry, and/or Microsoft's ability to control market prices or exclude competition.

Defendant CSS's attempt at market definition is also deficient. Although Defendant CSS's Counterclaims make vague references to a "secondary market," it never defines what the secondary market is or how it differs from any "first" market. At most, Defendant CSS makes conclusory allegations that Microsoft has structured its licensing program for Windows 95 software and Microsoft Office Pro 97 software in an effort to prohibit a licensed user from transferring the operating system to another machine—steps which would appear to be reasonable and necessary to protect the legitimate rights of a copyright holder rather than the exercise of unlawful, anticompetitive power.

■ CSS has also failed properly to allege that Microsoft willfully acquired or maintained monopoly power, another essential element. As the Plaintiff urges, an antitrust claimant must allege that the defendant acquired or maintained its market position through predatory or anticompetitive conduct, rather than as a consequence of a superior product, business acumen, or historic accident. *Grinnell*, 384 U.S. at 571, 86 S.Ct. 1698; *Cowley v. Braden Industries, Inc.*, 613 F.2d 751, 756 (9th Cir. 1980); *Microsoft v. BEC*, 818 F.Supp. at 1317. The Defendant's conclusory allegation that Microsoft has "maintained its monopoly power by anticompetitive means" is wholly insufficient to meet this unavoidable requirement.

Defendant CSS has failed to plead the elements or facts to support a monopolization claim under Section 2 of the Sherman Act, a second reason Plaintiff's motion to dismiss should be granted.

### 3. Failure to Plead the Essential Elements of Attempted Monopolization

■ Like its claim for actual monopolization, even if it had standing, Defendant CSS's claim for attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2, is defective. To state a claim for attempted monopolization, a defendant must plead the following elements: (1) a relevant geographic and product market; (2) that Microsoft has engaged in predatory or anticompetitive conduct—as opposed to vigorous, but lawful, competition; (3) that Microsoft "specifically intended" to acquire monopoly power within the market; and (4) that Microsoft's actions have achieved a "dangerous probability of success." *Spectrum Sports v. McQuillan*, 506 U.S. 447, 448–49, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993).

Defendant CSS alleges no conduct by Microsoft separate from that alleged under the actual monopolization claim, as discussed above. Thus, Defendant CSS cannot avoid its failure to allege any predatory or otherwise unlawful conduct by Microsoft, or that Microsoft possessed the specific intent to acquire monopoly power within a relevant market. Thus, the attempted monopolization claim must likewise fail.

### 4. Failure to Plead the Essential Elements of Unreasonable Restraint of Trade

Section 1 of the Sherman Antitrust Act provides in pertinent part that, "[e]very

contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Defendant CSS's only stated basis for its claim for unreasonable restraint of trade is the allegation that Microsoft is "tying" the sale of its operating systems and "software such as Windows 95 and Office Pro 97" with "other products." Again, even assuming CSS had established "antitrust standing," the scant allegations in the Defendant's Counterclaims are wholly inadequate to support a claim for unreasonable restraint of trade.

A tying arrangement is an agreement whereby a seller conditions the sale of one product or service (the tying product) upon the buyer's purchase of a second product or service (the tied product). *Northern Pacific Ry. Co. v. United States,* 356 U.S. 1, 5–6, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *White v. Rockingham Radiologists, Ltd.,* 820 F.2d 98, 103 (4th Cir.1987). In order to establish an *illegal* tying arrangement, a plaintiff must show that two separate and distinct product markets have been linked together, that the defendant used its market power to force its customers to accept the tying arrangement, and that the tying arrangement unreasonably foreclosed or restrained market competition in the tied product. *Jefferson Parish Hosp., Dist. No. 2 v. Hyde,* 466 U.S. 2, 18–21, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984); *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 506–08, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). "There is, at the outset of every tie-in case, including the familiar cases involving physical goods, the problem of determining whether two separate products are in fact involved." *Southern Pines Chrysler–Plymouth, Inc. v. Chrysler Corp.,* 826 F.2d 1360, 1362–63 (4th Cir.1987), *quoting, Fortner Enterprises, Inc. v. U.S. Steel Corp.,* 394 U.S. 495, 507, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969)

(Fortner I). *Accord Jefferson Parish,* 466 U.S. at 21, 104 S.Ct. 1551.

As discussed above, the Counterclaim contains insufficient allegations to establish two separate product markets. At most, the Counterclaim makes a conclusory allegation that the sale of Microsoft operating systems was "tied" to "other products"—wholly failing to define what those "other products," in fact, were—and that fails to give any indicia of how the operating systems and "other products" were "tied" together.

Finally, to properly allege a restraint of trade claim, an antitrust plaintiff must also establish a connection with interstate commerce. This connection may be shown either "by demonstrating that the alleged anticompetitive conduct occurred in interstate commerce, or by showing that the conduct, though wholly intrastate, had a substantial effect on interstate commerce." *Greenville Publishing Co., Inc. v. Daily Reflector, Inc.,* 496 F.2d 391, 395 (4th Cir.1974). As discussed above, the absence of a proper allegation of the interstate commerce element is yet another reason why this Counterclaim must be dismissed.

### 5. *Claim for Market Foreclosure*

Market foreclosure is one form of action under the Sherman Act. *Consul, Ltd. v. Transco Energy Co.,* 805 F.2d 490, 494 (4th Cir.1986). However, as discussed above, CSS has made no attempt to define the "market foreclosed" by Microsoft, explain how it competes with Microsoft, or explain how Microsoft has foreclosed it from entering this unformulated market. Therefore, recovery on this theory is also precluded. *Id.* ("a relevant market must be proven under" a theory of market foreclosure).

### 6. *State Law Claim*

Defendant CSS's claim under North Carolina statutory law is also unclear. Defendant CSS never states precisely which

North Carolina statute Microsoft has violated. Although the Counterclaim references N.C.G.S. §§ 75–16 and 75–16.1, because the North Carolina antitrust statutes track the language of the Sherman Act, the North Carolina Supreme Court has described the Sherman Act as "instructive in determining the full reach" of the statutes. *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E.2d 521, 530 (1973). *See also Hester v. Martindale–Hubbell*, Inc., 493 F.Supp. 335 (E.D.N.C.1980), *aff'd*, 659 F.2d 433 (4th Cir.1981). Accordingly, for the previously stated reasons, the Defendant CSS's state law claims must also be dismissed.

### C. *Defense of Abuse of Copyright*

Both Defendants seek to excuse their alleged theft Microsoft's intellectual property on the grounds that Microsoft had "abused" its copyright. As the Defendants would apparently have it, Microsoft's alleged monopolistic practices and/or abuse of its copyright creates a *de facto* "open season" on Microsoft's products. However, the law is not nearly so generous towards the Defendants' alleged conduct as they would like.

■ The defense of copyright abuse "forbids the use of [a] copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office." *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 977–79 (4th Cir.1990). A copyright abuse defense is a species of the equitable defense of unclean hands, which requires a defendant to show a nexus between the plaintiff's purported misconduct and the defendant's infringing acts. *See e.g., Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *Saxon v. Blann*, 968 F.2d 676, 680 (8th Cir.1992) ("The defense [of copyright abuse] does not apply 'where plaintiff's misconduct is not directly related to the merits of the controversy between the parties, but only where the wrongful acts' affect the equitable relations between the parties with respect to

the controversy"), *quoting Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir.1979); *and Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103 (D.Md.1989).

Indeed, even if Microsoft was found to be in violation of the antitrust law, this does not *ipso facto* render a legitimate trademark or copyright unenforceable. As the Court explained in *Coca–Cola Co. v. Howard Johnson Co.*, 386 F.Supp. 330, 337 (N.D.Ga.1974):

> Merely because a plaintiff has violated the antitrust laws, or any other laws, in some matter completely unrelated to the case before the Court [it] does not result in 'unclean hands' on the plaintiff's part. There must be some logical connection between the right plaintiff asserts and the activity constituting unclean hands. Otherwise, the courts must be willing to serve as a battleground for extensive antitrust litigation whenever an [intellectual property interest] holder seeks any, totally unrelated, equitable relief.

■ Rather, an essential element of the defense of copyright abuse is that the owner somehow misused or abused its copyright—beyond the ordinary and proper protections it affords—to prevent others from competing in the market. *See, e.g., Lasercomb*, 911 F.2d at 979 ("The misuse arises from Lasercomb's attempt to use its copyright in a particular expression ... to control competition *in an area outside the copyright* ") (emphasis added). Conversely, in cases where the copyright owner did not prohibit its licensees from either using or independently developing a competing product, courts have summarily rejected the copyright abuse defense. *See e.g., Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995); *Service & Training, Inc. v. Data General Corp.*, 963 F.2d 680, 690 (4th Cir. 1992); *Supermarket of Homes, Inc. v. San Fernando Valley Board of Realtors*, 786 F.2d 1400, 1408 (9th Cir.1986); *Microsoft Corp. v. BEC*, 818 F.Supp. at 1316–17 (distinguishing *Lasercomb* because the copy-

right owners in instant case did not prohibit independent development or use of a competing product); *and National Cable Television Association, Inc. v. Broadcast Music, Inc.,* 772 F.Supp. 614, 652 (D.D.C. 1991).

In this case, Defendants make vague allegations that Microsoft has misused its copyrights. They fail, however, to allege facts showing that Microsoft used its copyrights to prohibit directly the independent development or use of a competing product. In fact, Defendants do not claim that Microsoft employed any copyright to stop them from utilizing or developing a competitive product. Defendant's purported copyright misuse defense therefore fails as a matter of law. *Accord Triad Systems Corp.,* 64 F.3d at 1337; *Service & Training, Inc.,* 963 F.2d at 690; *and Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.,* 845 F.Supp. 356, 367 (E.D.Va.1994).

### III. *ORDER*

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1. "Plaintiff Microsoft Corporation's Motion to Dismiss ..." (document # 14) and "Plaintiff Microsoft Corporation's Motion to Strike ..." (document # 16) are **GRANTED;** that is, Defendant CSS's Counterclaims are **DISMISSED,** and the Affirmative Defense of Copyright Abuse is **STRICKEN** from both Defendants' Answers.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.